Carolyn L. DUCEY, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

Lois M. OLSON, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

Helen GRUGEL, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 81–6058.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 13, 1982.

Decided Aug. 18, 1983.

As Amended Oct. 27, 1983.

Betsy Ginsberg, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Arthur J. Jaffee, Pomona, Cal., for plaintiffs-appellants.

Before SKOPIL and FLETCHER, Circuit Judges, and GRAY,* District Judge.

FLETCHER, Circuit Judge:

Plaintiffs appeal from the district court's judgment for the defendant United States in three consolidated wrongful death actions brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680 (1976). 523 F.Supp. 225 (D.Nev. 1981). We have jurisdiction under 28 U.S.C. § 1291 (1976). We reverse in part and affirm in part.

* The Honorable William P. Gray, District Judge for the Central District of California, sitting by designation.

1. The trial court's factual finding that "[t]he contract required that 1¾% of gross *profits* be paid to the Park Service annually" (emphasis added) is clearly erroneous. Section 9(a) of the

## FACTS

The spouses of the three plaintiffs in these consolidated cases (the "Users") were killed in a flash flood in the Lake Mead National Recreational Area (LMNRA) in Nevada on September 14, 1974. The Users had been camping at and boating from a recreational site on the banks of the Colorado River in Eldorado Canyon. The National Park Service (NPS), the agency that operated the LMNRA, provided a ranger station, boat launching ramp, and comfort stations at the site. In the same area Eldorado Canyon Resorts, Inc. (ECR), a concessioner of the NPS, maintained and operated a cafe-store, boat slips, automobile fueling and boat service facilities, rental cabins, and trailer spaces.

The parties stipulated that on the day of the flood, each of the Users was present "in the canyon that day for recreational purposes." None of the Users had paid a fee directly to the NPS or to the United States either to gain entrance to or to engage in recreational activities on the public lands in the LMNRA or to use the NPS-provided facilities. Two of the Users had paid rental fees to ECR for use of a boat slip, one User had rented a trailer space, and all three Users had recently bought various goods at the ECR cafe-store.

Pursuant to the terms of the concession agreement between ECR and the NPS, ECR was obligated to remit to the United States 1¾% of its gross annual receipts[1] from sales at the cafe-store and from boat slip and trailer space rentals and to fulfill certain other maintenance and caretaking responsibilities. However, ECR in fact

concession agreement states that NPS was entitled to "(1¾%) of the concessioner's *gross receipts*" (emphasis added), which "receipts" were defined by the contract to be "the total amount received or realized by all sales ... of services, accommodations, and other merchandise" by ECR.

made no payment to the NPS for the calendar year 1974.

Following the flood, the surviving spouses of the Users brought suit against the United States in district court for damages allegedly caused by a breach of duty of NPS and ECR employees to warn of or guard against the flood.

## ANALYSIS

The FTCA provides a limited exception to the sovereign immunity of the United States for suits in tort, where an injury is caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

### I. Tort Liability of United States for Negligence of NPS Employees.

 The trial court, applying the law of the place (Nevada),[2] found the Government immune from tort liability under the Nevada recreational use statute, Nev.Rev. Stat. 41.510 (1973).[3] Plaintiffs challenge

---

2. The liability of the United States for the allegedly negligent or wrongful omissions of NPS employees is determined under the "law of the place where the ... [negligent or wrongful] omission occurred," 28 U.S.C. § 1346(b), not the place of the accident, loss, or injury or the place where the act or omission had its "operative effect." *Leaf v. United States*, 588 F.2d 733, 735 (9th Cir.1978). Furthermore, under *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1961), the whole law (including the choice of law principles) of the state in which the allegedly wrongful act or omission occurred must be applied to determine whether the United States is liable under § 1346(b).

Since an omission, by its very definition, is an act which failed to occur, an allegedly negligent omission cannot have actually "occurred" anywhere. Hence, Congress must have intended the applicable law under § 1346(b) in regard to a negligent omission to be that of the place where the act necessary to avoid negligence should have occurred. *Cf. Mundt v. United States*, 611 F.2d 1257, 1259 (9th Cir.1980) (Arizona tort law applied under FTCA to failure to release prisoner from Arizona jail presumably stemming in part from decisions occurring outside Arizona); *Gard v. United States*, 594 F.2d 1230, 1232–33 (9th Cir.) (Nevada tort law applied to failure to place fences to mark Nevada mine stemming in part from decisions of Bureau of Mines officials in Washington, D.C.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979).

Here, plaintiffs have alleged numerous wrongful or negligent omissions, including a failure to close down the facility and a failure to post signs. While these omissions may have stemmed in part from decisions made in San Francisco, California, the omissions could have been prevented only by the doing of such physical acts as the posting of signs, the erection of barbed wire, and the tearing up of boat slips and trailer spaces in Nevada. Contrary to plaintiffs' contention that California law applies to this case, the omissions "occurred" in Nevada, and Nevada whole law (including Nevada choice of law principles) governs the determination of liability of the United States.

Although the Nevada courts have not addressed the issue of the appropriate choice of law principles for tort cases, we have held, in the context of another tort case, that the Nevada choice of law rule follows that set forth in the Restatement (Second) of Conflict of Laws. *Hanley v. Tribune Pub. Co.*, 527 F.2d 68, 69 (1975).

3. Nev.Rev.Stat. § 41.510 (1973) states in pertinent part:

1. An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping, hiking, sightseeing, or for any other recreational purposes, or to give warning of any hazardous condition, activity or use of any structure on such premises to persons entering for such purposes, except as provided in subsection 3 of this section.

2. When an owner, lessee or occupant of premises gives permission to another to hunt, fish, trap, camp, hike, sightsee, or to participate in other recreational activities, upon such premises:

(a) He does not thereby extend any assurance that the premises are safe for such purpose, constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom permission is granted, except as provided in subsection 3 of this section.

. . . .

3. This section does not limit the liability which would otherwise exist for:

(a) Willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity.

this holding, asserting that immunity under the recreational use statute does not obtain here. The government contends that, even if the ruling below were incorrect, the government is not liable because the government's conduct falls within the discretionary function exemption from tort liability contained in the FTCA.

### A. *Immunity Under Recreational Use Statute.*

██ Apart from the generally applicable Nevada rules governing tort liability, the Nevada recreational use statute[4] provides immunity for a landowner whose property is used for recreational purposes, subject, however, to several exceptions. In holding for the defendant, the trial court found that section 41.510(1), the immunity section, is applicable to the facts of this case and that neither of two possible exceptions contained in section 41.510(3) change the result. In particular, the district court found the consideration exception to the Nevada recreational use statute, subsection 41.510(3)(b), inapplicable on the ground that the various forms of "consideration" allegedly tendered by the Users—money for store purchases, moorage fees, and trailer space rental fees—were tendered not to the United States but to ECR and that

"[m]oney paid to the concessioner is not payment to the Government."

Plaintiffs challenge this holding on the ground that the consideration exception is applicable on the facts of this case. The Government contends that the district court's conclusion should be upheld for two reasons: (1) since the Users made no direct payments for permission to enter, no "consideration" in the sense of subsection 41.-510(3)(b) was tendered; and (2) even if such "consideration" in the sense of subsection 41.510(3)(b) was tendered, it was not tendered to the United States. We reject both of the Government's contentions and conclude that the exception is applicable here.[5]

### 1. *Lack of Transfer of "Consideration."*

The Government argues first that even if the Government itself had operated the Eldorado Canyon facility none of the various forms of consideration ECR received are the sort of "consideration" in return for "permission to participate in recreational activities" required under subsection 41.-510(3)(b). Like any other visitors to Eldorado Canyon, the Users paid no direct fee to enter the Canyon, to boat on the Colorado, or to hike, fish, sightsee, or participate in

(b) Injury suffered in any case where permission to hunt, fish, trap, camp, hike, sightsee, or to participate in other recreational activities, was granted for a consideration other than the consideration, if any, paid to the landowner by the state or any subdivision thereof....

4. Nothing in this section creates a duty of care or ground of liability for injury to person or property.

**4.** Under Nevada choice of law rules, *see supra* note 2, "whether a person is excused from liability by reason of the fact that his action [or omission] was ... privileged by the local law of the state where he acted [or failed to act]" is usually determined by the substantive rules of the state where the conduct or lack thereof and injury occurred. Restatement (Second) of Conflict of Laws § 163 & comment a (1971). Since the alleged failure to warn of or to guard against accidents in·Eldorado Canyon "took

place" in Nevada, *see supra* note 2, since the deaths themselves occurred in Nevada, and since Nevada is otherwise clearly the state with the most significant relationship to the flood and the injuries, any immunity of the United States for accidents arising from the use of the land it owns in and around Eldorado Canyon is governed by Nevada tort law. *See Gard v. United States,* 420 F.Supp. 300, 302 n. 1 (N.D. Cal.1976) (applying Nevada recreational use statute to California residents injured on Nevada land), *aff'd,* 594 F.2d 1230 (9th Cir.1979).

**5.** Since we conclude that the consideration exception to § 41.510 is applicable in this case, we need not decide whether the trial court properly ruled that the willful or malicious misconduct exception to § 41.510 was inapplicable. Furthermore, we need not reach plaintiffs' contentions that § 41.510 has no application to developed recreational areas or to public facilities.

any other recreational activity in the Canyon. The only consideration tendered was for the purchase of products or for the use of the artificial amenities of trailer spaces and boat slips. The Government insists that subsection 41.510(3)(b) is applicable only where a fee is specifically charged for permission to enter. We do not read the exception so narrowly.

No Nevada or Ninth Circuit cases construing Nevada law address the scope of the consideration exception to the Nevada statute. However, the statutory language, the principle of statutory construction governing statutes in derogation of the common law, the policy underlying the statute, and the case law of other jurisdictions all support a broad application of that exception.

■ First, the language of the consideration exception itself suggests a broad reading of section 41.510(3)(b). The exception is worded not in narrow terms of "fee" or "charge," but rather in the far more encompassing terms, "for a consideration." [6] "Consideration" is a term of art, a word with a well-understood meaning in the law, embracing any "right, interest, profit or benefit." *Black's Law Dictionary* 277 (rev. 5th ed. 1979). Used in a statute, it should be accorded that meaning. *Application of*

*Filippini,* 66 Nev. 17, 24, 202 P.2d 535, 538 (1949). The statutory exception, then, is itself literally applicable to situations well beyond those involving a strict charging of a "fee" for "permission" to recreate.[7]

■ Since the recreational use statute is in derogation of common law rules of tort liability, we take care to avoid an overbroad interpretation of the statute that would afford immunity that was not intended. *See Rush v. Nevada Industrial Commission,* 94 Nev. 403, 407, 580 P.2d 952, 954 (1978) (statute in derogation of common law should be read narrowly); *West Indies, Inc. v. First National Bank of Nevada,* 67 Nev. 13, 33–34, 214 P.2d 144, 154 (1950) (same); *Copeland v. Larson,* 46 Wis.2d 337, 347, 174 N.W.2d 745, 749–50 (1970) (recreational use statute construed narrowly since in derogation of common law). Consequently, *exceptions* to the statute, including the consideration exception, must be given the broadest reading that is within the fair intendment of the language used.

The policy underlying the adoption of a consideration exception to the Nevada recreational use statute is to retain tort liability in actions involving recreational use of land where the use of the land for recreational purposes is granted not gratuitously

---

6. Comment, *Wisconsin's Recreational Use Statute: A Critical Analysis,* 66 Marq.L.Rev. 312, 312, 340–41 (1983) (comparing recreational use statutes requiring an "admission price or fee" with those requiring only "commercial activity" or a "consideration") [hereinafter cited as Comment, *Wisconsin's Statute*]; Barrett, *Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability,* 53 Wash.L.Rev. 1, 7 & n. 45, 11 & n. 74 (1977) (comparing statutes based on model act expressing exception strictly in terms of "fee" or a "monetary admission" with other statutes which "have departed from the model act and speak principally in terms of consideration passing from an entrant to an owner" and do not "disregard ... potential benefit of a material or pecuniary nature").

7. The existence of the last clause of subsection 41.510(3)(b), which states that a payment by a

Nevada governmental entity to a landowner is not "consideration" in return for permission to recreate, further supports a broad reading of the term "consideration" in subsection 41.-510(3)(b). If the term "consideration" were read to encompass only direct payments by recreational users in return for permission to recreate, as the Government urges, then the last clause in subsection 41.510(b)(3) would be superfluous. *See Copeland v. Larson,* 46 Wis.2d 337, 346–47, 174 N.W.2d 745, 750 (1969) (broad construction given to term "valuable consideration" in Wisconsin recreational use statute in part because of inclusion elsewhere in statute of a specific exclusion of "contributions to sound management and husbandry of natural and agricultural resources resulting directly from the recreational activity [*i.e.,* keeping down deer population by hunting]" from term "valuable consideration").

but in return for an economic benefit.[8] Since the potential for profit alone is thought sufficient to encourage those owners who wish to make commercial use of their recreational lands to open them to the public, the further stimulus of tort immunity is both unnecessary and improper.[9] Furthermore, where a landowner derives an economic benefit from allowing others to use his land for recreational purposes, the landowner is in a position to post warnings, supervise activities, and otherwise seek to prevent injuries. Such a landowner also has the ability to purchase liability insurance or to self-insure, thereby spreading the cost of accidents over all users of the land.[10]

An ability to spread risks exists regardless of whether the economic benefit the landowner derives is in the form of direct entrance fees or in the form of revenues from a connected economic enterprise. Confining the term "consideration" in subsection 41.510(3)(b) solely to direct payments of entrance fees or charges would extend the immunity of the statute beyond those persons whom the statutory policy would protect.

Our conclusion is consistent with decisions of this and other courts, construing the consideration exceptions of the recreational use statutes of other states. In *Graves v. United States Coast Guard,* 692 F.2d 71, 73 (9th Cir.1982) (per curiam), we held that the California recreational use statute did not immunize the United States from liability for injuries arising out of the use of a riverside cabana, even though the only alleged "consideration" was the payment of a fee to private entrepreneurs for the privilege of camping near the river. We held that since the use of the cabana and access to the river were implied benefits received as a consequence of the payment of consideration to the campground operators, the camping fee was *considera-*

---

**8.** Council of State Governments, *Suggested State Legislation,* Vol. XXIV, 150–52 (1965) (commentary) (immunity should apply only to "accommodating owner who receives no compensation or other favor in return") [hereinafter cited as Model Act]; Comment, *Wisconsin's Statute, supra* note 6, at 316 ("landowner is relieved of certain tort liabilities when he gratuitously allows members of the public recreational access to his land"); Note, *Tort Liability and Recreational Use of Land,* 28 Buff.L. Rev. 767, 778 (1979) (since "legislative intent" of recreational use statute is "to grant immunity only to those owners who open their lands primarily for recreation rather than profit," statute "does not extend to ... defendants if they provided access to recreational facilities with a business motivation") [hereinafter cited as Note, *Tort Liability*]; Note, *The Minnesota Recreational Use Statute: A Preliminary Analysis,* 3 Wm. Mitchell L.Rev. 117, 119, 139 (1977) (recreational use statutes "offer a pragmatic trade-off whereby the landowner is relieved of certain tort duties when he gratuitously allows access to his land by members of the public for recreation"; where landowners permit entry for reasons of "self-interest" or for "expectations of financial gain" and hence grant "consent in exchange for benefits exacted from the recreation-seeking entrant," protection should be denied) [hereinafter cited as Note, *Preliminary Analysis*].

**9.** Model Act, *supra* note 8, at 150 ("little reason" exists to provide immunity where "owners of ... land suitable for recreational use make it available on a business basis"); Note, *Tort Liability, supra* note 8, at 777–778 ("statutory purpose" of recreational use statute "to encourage gratuitous access to private lands makes it inconsistent to allow a landowner to collect money for entrance to the land and still claim statutory immunity"); Note, *Preliminary Analysis, supra* note 8, at 144 (interpretation of consideration "to cover only direct monetary benefits received in return for entry upon the land" would be "unfortunate" since "[t]his interpretation" would "allow[ ] a landowner to use the recreational use statute to lure persons onto the land in expectation of a gain" without paying for accidents resulting from that entry, even though "[m]embers of the public should not be expected to subsidize a legitimate expense of a commercial enterprise by absorbing the cost of expected accidents"); *see* Comment, *Wisconsin's Statute, supra* note 6, at 342 (consideration should be defined to include "any payment to landowners either in money or anything else of value," except for mere "goodwill flowing to the landowner as a result of allowing recreational use of his land").

**10.** Barrett, *supra* note 6, at 12; Note, *Preliminary Analysis, supra* note 8, at 144 (where "entry of recreational users" is "an integral part of a commercial enterprise" and the "[g]eneration of sufficient monies to fund supervision of activities or inspection of the land, or to provide insurance would be expected as a result," the "[i]mposition of liability ... is not an undue burden").

*tion* in return not merely for "permission to camp" but also "to gain access to the river" and "to use waterside facilities" within the meaning of the consideration exception to the California recreational use statute. *Id.*

Similarly, in *Copeland v. Larson,* 46 Wis.2d 337, 347, 174 N.W.2d 745, 749–50 (1970), the Wisconsin Supreme Court denied immunity under the Wisconsin recreational use statute to a lakeshore resort owner who had allowed free access to a dock and swimming area adjacent to his general store and short-order restaurant. The Wisconsin statute provided in pertinent part that the section "does not limit the liability which would otherwise exist ... for injury suffered in any case where permission to hunt, fish, trap, camp, hike, sightsee, berry-pick or to proceed with water sports or recreational uses was granted for a valuable consideration." *Id.* at 340 n. 1, 174 N.W.2d at 747 n. 1. In *Copeland,* the plaintiff swam and dived from the pier "without restriction and without paying any charge because no such charge was ever imposed." *Id.* at 339, 174 N.W.2d at 747. Although the plaintiff had been a "patron of the store" in the past, he had not made any purchases on the day of the accident. *Id.* The Wisconsin court nonetheless found the consideration exception applicable, holding that "valuable consideration" included not merely "a monetary fee paid to the landowners" but also "non-monetary benefits and indirect economic benefits flowing to the owner from the recreational use of his land." *Id.* at 346, 174 N.W.2d at 750–51.

In *Kesner v. Trenton,* 216 S.E.2d 880 (W.Va.1975), the West Virginia Supreme Court held the West Virginia recreational use statute inapplicable to a marina operator, who coincident with renting "spaces for private boats" and "parking spots with electricity, water, and toilet facilities," and operating a store, "provided, without charge to the general public, areas for picnicking and swimming in the waters adjacent to [his] boat dock and marina." *Id.* at 882. The West Virginia statute denies immunity to landowners who make a charge to a person to enter or go upon the land. It defines "charge" as "the amount of money asked in return for an invitation to enter or go·upon the land." *Id.* at 885. Since the plaintiffs in *Kesner* had not paid to picnic or swim at the marina and had not rented a boat from the operator, the court noted that "technically ... there was not an 'amount of money asked in return for an invitation to enter or go upon the land'" as literally required by the statute. *Id.* at 883, 885. Nonetheless, the court held that the defendant's reasonable expectation "to attract prospective customers and thus, to increase sales and rentals at the marina by allowing people to swim in the lake at no cost" was "a sufficient 'charge' within the meaning" of the statute to toll the imposition of tort immunity. *Id.* at 885.

As in the cases discussed, the Users did not pay an entrance or permission fee or charge to participate in recreational activities in Eldorado Canyon. But, just as in the other cases, similar amenities were offered by the concessioners, and all but one of the Users had rented boat slips or trailer spaces and all had regularly purchased goods from the cafe-store.[11] Moreover, all were concededly participating in recreational activities in Eldorado Canyon, and not elsewhere, at the time of the flood. We conclude that if the United States itself had operated the Eldorado Canyon facility the rentals and purchases by the Users would constitute "consideration" in return for permission to recreate in Eldorado Canyon within the meaning of the consideration exception to the Nevada statute.[12]

---

**11.** Each of the Users actually rented a trailer space or boat slip or made purchases at the cafe-store in conjunction with his participation in recreational activities in Eldorado Canyon on September 14, 1974. Thus, we need not reach the question of whether, in light of the authority of *Copeland* and *Kesner,* the mere anticipated revenues of the facility expected as a result of the Users' participation in recreational activities in Eldorado Canyon would alone be sufficient to invoke application of subsection 41.-510(3)(b).

**12.** *Jones v. United States,* 693 F.2d 1299 (9th Cir.1982) (inner tube rental fee not "fee" under Washington statute), and *Smith v. United*

## 2. Lack of Payment of Consideration to United States.

The Government contends that, even if moorage and trailer fees and cafe-store purchases constitute "consideration" in · the sense of 41.510(3)(b), the exception does not apply since ECR, and not the United States, operated the cafe-store and rental facilities. The Government argues that since ECR had no power to deny permission to the Users to recreate in Eldorado Canyon and since the Users paid ECR and not the United States for all rentals and purchases, the consideration is not in return for permission to recreate as required by subsection 41.510(3)(b). We reject that argument.

■ Subsection 41.510(3)(b) does not specify to whom consideration must be tendered. We think it a fair reading of the provision, however, that consideration must be tendered directly or indirectly to a person who has the power to grant or deny permission to participate in recreational activities. Since the concession agreement did not give ECR the power to deny permission to recreate in Eldorado Canyon, the exception is applicable only if consideration was tendered, directly or indirectly, to the United States in return for permission to recreate in Eldorado Canyon. We conclude that this condition is met in this case.

■ Before entering its concession agreement with ECR, the United States certainly was free to deny permission to recreate in Eldorado Canyon. *See Jones v. United States,* 693 F.2d 1299, 1302–03 (9th Cir.1982). Thereafter, however, it was not. The concession agreement required the concessioner to provide and maintain facilities, to offer services, and to pay to the government a fixed percentage of all revenues from operations. Implicit in the agreement was a commitment on the government's part that users would be allowed to enter the area to use the concession facilities. Under these circumstances, we conclude that the consideration tendered here by the Users to ECR was in return for permission to participate in recreational activities in Eldorado Canyon in the sense of subsection 41.510(3)(b).[13]

*States,* 383 F.Supp. 1076, 1080 (D.Wyo.1974) (vehicular fee to enter park not "charge" under Wyoming statute), *aff'd on other grounds,* 546 F.2d 872 (10th Cir.1976), are inapposite here. The statutory "consideration" language at issue in those cases was much more narrowly drafted than that contained in the Nevada statute. *See Jones,* 693 F.2d at 1301 (no immunity where "charging a fee of any kind" takes place); *Smith,* 383 F.Supp. at 1080 (no immunity where "charge" paid by those "who enter or go on the land"). Furthermore, neither *Smith* nor *Jones* considered the possibility that actual or potential economic benefits that accrue to the commercial operations of the government or its lessees in federal parks might constitute a "fee" or "charge" for permission to enter the parks under the Washington or Wyoming statutes.

The facts in *Jones* are significantly different from the case before us. The facts here are much closer to those in *Graves,* 692 F.2d 71 (9th Cir.1982) (per curiam), decided a month before *Jones,* which upheld the application of the consideration exception to the California recreational use statute. In *Jones,* the concessioner's "rights were limited to the lodge building and a 6–12 foot strip surrounding the lodge." 693 F.2d at 1300 n. 2. By contrast, in both *Graves* and the instant case, the concession area included both a campground and extensive water facilities. *See Graves,* 692 F.2d

at 73–74. The extent of the facilities and the control of the concessioner over the concession area in *Graves* and in this case are similar.

Finally, while the *Jones* court seemed to attach importance to the fact that the user "could have used the Hurricane Ridge or any other area of the Park without making payment if she had brought her own tube," 693 F.2d at 1303, *Graves* attaches no importance to the question whether access to the cabana or waterside facilities there was dependent on payment of a campsite rental fee.

13. Whatever the applicability of subsection 41.-510(3)(b) might be in a situation where the United States permitted the operation of a recreational facility without requiring any monetary or other obligations from the operator, here the United States was entitled by the terms of its contract with ECR to tangible economic benefits arising out of the operation of the Eldorado Canyon facility, *i.e.,* a percentage of ECR's gross receipts and the performance of certain maintenance obligations. Moreover, the continued operation of the ECR facility directly depended on the presence of recreational users in the Canyon, whose presence was in turn wholly dependent on the implied commitment of the United States to ECR to allow the free entrance of recreational users to Eldorado Canyon.

In so holding, we break no new ground. While we recognize that the case law pertaining to the recreational use statutes of other jurisdictions must be viewed cautiously because of variations from statute to statute, we see our interpretation of subsection 41.510(3)(b) to be in keeping with this court's construction of similar consideration exception clauses in the recreational use statutes of other states.

In *Graves v. United States Coast Guard,* for example, the Ninth Circuit imposed liability on the United States although the plaintiff had paid his camping fee to a private campground operator, who had leased the camping area from the United States. 692 F.2d at 73. Noting that the statute did "not specify to whom the consideration is to be paid," we held that even though the fee was paid to the government's lessee and not to the United States, the fee constituted "a consideration" in return for "permission to enter" for "a recreational purpose" and thereby invoked the consideration exception to deny immunity to the United States under the California recreational use statute. *Id.*

Similarly, in *Thompson v. United States,* 592 F.2d 1104 (9th Cir.1979), we denied immunity to the government. An injured motorcycle rider had paid a fee to a racing association in return for permission to participate in a motorcycle race. *Id.* at 1108. The racing association had previously paid a fee to the Bureau of Land Management for the right to hold a race on government land. Even though the injured rider had not himself paid a fee to the United States for permission to enter United States land, we nonetheless held that, under the totality of the circumstances, the rider had tendered "consideration" in return for "permission to enter for [vehicular riding] purposes" within the meaning of the consideration exception to the California recreational use statute. *Id.*

■ The denial of immunity in the cases we describe comports with the general policy considerations underlying the exception. The consideration exception is not simply a mechanical test to distinguish those recreational use cases that involve direct payments from user to landowner from those that do not. Rather, it is intended to serve more broadly as a proxy for differentiating the entrepreneur-landowner whose land is open for business reasons from the landowner whom the statute encourages to open his land on a gratuitous basis by the promise of immunity.[14] The relevant factor in determining whether to apply the "consideration" exception is thus not whether the consideration passes directly from user to landowner but rather whether economic benefit inures to the landowner.

ECR's failure to make payment on its concession agreement in 1974, the year of the accident, does not affect the result. All of the Users had actually purchased products at the ECR cafe-store in the time period immediately preceding the accident, and all but one had made rental payments to ECR for moorage and trailer spaces. Under the concession agreement the United States was entitled to 1¾% of ECR's gross receipts including those payments by the Users. The failure of ECR to make good on its monetary and other contractual obligations to the government, for whatever reasons, is irrelevant. The payments by the Users to ECR, as to which the United States is entitled to a share, constitute consideration in return for permission to recreate in Eldorado Canyon.

By holding the consideration exception applicable on the facts of this case, we do not imply that the exception applies to a broader geographic area than that over which the concessionaire has the explicit or implicit power to grant or deny permission to recreate.[15] All three of the Users were

---

14. *See* Model Act, *supra* note 8, at 150; Barrett, *supra* note 6, at 11–12; Note, *Tort Liability, supra* note 8, at 776–780; Note, *Preliminary Analysis, supra* note 8, at 119, 139–145.

15. The government, unlike private landowners, has vast areas of public lands, much of it open to the public for one use or another. Where application of the consideration exception is based on consideration in the form of purchases or rentals from a government concession-

killed while in Eldorado Canyon, well within the geographical boundaries of ECR's concession facility.[16]

### B. Discretionary Function or Duty Exemption to § 1346(b).

The Government contends that, even if it derives no immunity from the Nevada recreational use statute, it is nonetheless immune under the discretionary function exemption of the FTCA. The exemption provides in pertinent part:

> The provisions of this Chapter and Section 1346(b) of this title shall not apply to—(a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (1976). The government asserts that the allegedly negligent acts and omissions of NPS employees upon which plaintiffs' claims are based constitute the exercise of a "discretionary" function or duty on the part of a federal employee in the sense of section 2680(a).

 Whether an act or omission is a discretionary activity in the sense of section 2680(a) turns on whether the act or omission occurred on the "planning" level of governmental activity or on the "operational" level. *Nevin v. United States*, 696 F.2d 1229, 1230 (9th Cir.1983); *Lindgren v. United States*, 665 F.2d 978, 980 (9th Cir.1982). In addition to examining the level at which the act or omission took place, our court has also considered "the ability of the judiciary to evaluate the act or omission and whether judicial evaluation would impair the effective administration of the government." *Nevin*, 696 F.2d at 1230. While the government's decision to encourage recreation at Eldorado Canyon is the exercise of a discretionary function, the government's duty to warn of or guard against hazards resulting from that decision may nonetheless be actionable. *Lindgren*, 665 F.2d at 980–81 (citing cases). The judgment and decision-making involved in day-to-day management of a recreational area are not the sort of decision-making contemplated by the exemption. *See Thompson v. United States*, 592 F.2d 1104, 1111 (9th Cir.1979).

 The trial judge made no findings on the applicability of the discretionary function exemption. On remand, the trial court must examine the alleged acts of commission and omission alleged (among them, the failure to post signs warning of the possibility of a flood, the failure to remove or repair an earthen dam at one end of the canyon, and the failure to institute flood evacuation procedures) to determine whether, on the facts of this case, they fall within or without the discretionary function exemption. *See Lindgren*, 665 F.2d at 982.

### C. Tort Liability of United States Under Nevada Law.

Both the plaintiffs and the defendant argue the respective merits of their positions under Nevada tort law in the event the government is not immune. The trial court, however, made no factual findings and drew no legal conclusions regarding the defendant's liability in tort under Nevada law, absent the immunity of the recreation-

---

er, the exception applies only to that particular area to which the government must grant access for recreation because of its commitments to the concessioner.

**16.** Each User personally made purchases or rentals from ECR. Hence, we need not decide in this case whether the exception could be invoked, even absent actual payments, on the ground that the Users were part of the class of recreational users in Eldorado Canyon who conferred economic benefits on the United States by making purchases and rentals from ECR. There is authority, however, for the proposition that, as long as the landowner derives or expects to derive pecuniary benefits from permitting persons similarly situated to the injured party to use the land for recreational purposes, the condition is met. *See Copeland v. Larson*, 46 Wis.2d 337, 339, 347, 174 N.W.2d 745, 747, 751 (1969) (immunity denied despite finding of no actual purchases by injured party on day of accident); *Kesner v. Trenton*, 216 S.E.2d 880, 883, 885 (W.Va.1975) (immunity denied despite finding of no actual rentals or purchase by decedents or decedents' parents from alleged tortfeasor).

al use statute. Further proceedings consistent with this opinion on the issue of liability of the United States for acts and omissions of NPS employees under Nevada tort law will be required if the government's conduct was not discretionary within the meaning of the FTCA.[17]

## II. Tort Liability of United States for Negligence of ECR or Its Employees.

■ The government argues that the negligence of ECR or its employees, as the negligence of "agents" of the United States, may not be imputed to the United States to form the basis of tort liability under section 1346(b). We agree.

■ The United States is not liable under the FTCA for the negligence of its independent contractors. 28 U.S.C. § 2671; *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). The critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the "detailed physical performance" and "day-to-day operations" of the contractor, and not whether the agent must comply with federal standards and regulations. *Orleans,* 425 U.S. at 814–15, 96 S.Ct. at 1975–76 (citing *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973)). In both *Logue* and *Orleans,* the Supreme Court held that in the absence of the authority of federal employees to supervise the day-to-day operations of a contractor, the mere ability of the government to compel compliance with federal standards is not sufficient to create an agency relationship. *Orleans,* 425 U.S. at 816, 96 S.Ct. at 1976; *Logue,* 412 U.S. at 527–28, 93 S.Ct. at 2219. While "by contract, the [federal] Government may fix specific and precise conditions to implement federal objectives," such restrictions required by regulation "do not convert the acts of entrepreneurs . . . into federal governmental acts." *Orleans,* 425 U.S. at 816, 96 S.Ct. at 1976 (footnote omitted).

The trial court did not err in finding that ECR was an independent contractor. ECR was required by the concession agreement to submit price lists for federal approval, to "maintain and operate" the facilities "to such extent and in such manner as the Secretary may deem satisfactory," to pay a fixed percentage of revenues to the United States, and to comply with numerous other contractual provisions. Many of these contractual provisions find their origin, however, in various rules and regulations which were issued by the Department of the Interior for "standard" concession agreements. As such, they are the sort of regulation-mandated contractual restrictions described in *Orleans* that are designed to secure federal objectives and that, despite their restrictive effect on the activities of the contracting party, do not convert an independent entrepreneur into an "agent" of the federal government.

Furthermore, the contractual provisions themselves, while restricting the operations of ECR to some degree, do not give the NPS authority to regulate the detailed physical performance of conducting a recreational facility in Eldorado Canyon. Instead, they leave the concessioner in large part free to select the means of implementing the contractual requirements. For example, while the NPS, by contract, had the power to regulate and approve the rates and prices of goods and services charged by ECR, the contract nowhere gives the NPS the power to set prices initially or to choose the specific items or goods to be sold. Similarly, while the NPS had the contractual power to disapprove "unfit" employees and to require employees of ECR to wear a uniform or badge, the contract does not empower the Secretary to supervise the initial hiring decisions, the assignment of job tasks, the choice of uniform color and design, the placement of the badge, the frequency of uniform laundering, or any other day-to-day activities. Plaintiffs assert that it was the usual absence of the NPS ranger

---

17. We leave to the district court, to the extent it may be required, the application of substantive law under Nevada choice of law rules to the issues remaining for resolution at trial. *See supra* note 2.

from Eldorado Canyon on his duties elsewhere that was in part responsible for the deaths in this case. We take this as an indication that the only federal employee who conceivably could have executed any supervisory authority the federal government might have had over the day-to-day operations of ECR did not in fact exercise any substantial control over ECR activities. The degree of federal authority to supervise and control the day-to-day operations of ECR that is required under the *Orleans* test is simply lacking.[18]

## CONCLUSION

The district court erred in its determination that the consideration exception to the immunity provided by the Nevada recreational statute, Nev.Rev.Stat. § 41.510, did not apply to remove the shield of the statute from the United States for the alleged negligence of its employees. The district court's finding that ECR was an independent contractor whose negligence cannot be imputed to the United States was not error.

Material factual issues remain to be tried as to (1) whether the United States is entitled to the benefit of the discretionary function exemption of the FTCA; and (2) if not, whether the United States was negligent.

We AFFIRM in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.

SKOPIL, Circuit Judge, specially concurring:

I concur in the reasoning of our majority opinion authored by Judge Fletcher. I write separately to emphasize that the language of the Nevada recreational use statute compels this decision. Language in other state recreational use statutes, however, does not impose liability on the United States. *E.g., Jones v. United States,* 693 F.2d 1299, 1303–04 (9th Cir.1982) (Washington recreational use statute). The Federal Torts Claims Act exception to sovereign immunity depends on application of state law. FTCA claims based on state recreational use statutes will thus continue to yield the disparate results shown in the cases surveyed in our opinion.

It is difficult to imagine that Congress, in passing the Federal Torts Claims Act, envisioned liability of the United States for injuries during recreation on the public lands. Nevertheless, the FTCA permits no other result when the Nevada recreational use statute is applied. If the liability of the United States is to be based on a uniform policy rather than the vagaries of individual state recreational use statutes, congressional action is definitely required.

WILLIAM P. GRAY, District Judge, dissenting:

I agree with the district court that the Government was entitled to immunity under the Nevada Recreational Use Statute and therefore would affirm the judgment rendered by the trial court.

We start with the proposition that a person is welcome to make use of the wilderness areas of the United States, but that he does so at his own risk with respect to the hazards of the terrain and the elements. If the Government, or another owner, were to be exposed to liability if it fails to warn each such user of any potential danger from flooding or fire or avalanche, such areas doubtless would be placed off limits, to the great disadvantage of people that enjoy using them.

The burden of loss for the unfortunate deaths here concerned must lie where it falls, unless there is a valid reason to place it elsewhere. The Nevada statute attempts to recognize this problem and establish a reasonable balance of considerations: An owner of land that is willing to permit others the use of it for recreational purposes is freed from liability unless he requires a "consideration" for "permission . . . to participate in . . . recreational activ-

---

**18.** We express no opinion on whether certain of the alleged acts and omissions by ECR and its employees may under Nevada tort law constitute either breaches of duties of the United States as landowner that are not delegable by the United States to an independent contractor or breaches of obligations of both the United States and ECR.

518

ities." I read the statute to mean quite clearly that the owner is exempt from liability unless he charges a *fee* for granting permission to participate in these recreational activities. Thus, I think that the attempt in the opinion to impose liability upon the owner in the event *any* transaction for consideration takes place while a person is on the property imposes a burden that is not intended by the statute. I cannot believe that the fact that the decedents may have bought coffee or a candy bar or paid a fee for a place to park a trailer should be allowed to negative the fact that they were given free access to the area.

In light of the foregoing, I am obliged respectfully to note my dissent.