**Prince COVINGTON, individually and as personal representative of the Estate of Deceased Minor Child Joshua Covington, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

Civ. No. 94–00330 ACK.

United States District Court, D. Hawai'i.

May 16, 1995.

Michael Jay Green, David J. Gierlach, Honolulu, HI, for plaintiffs.

Theodore G. Meeker, United States Attorneys Office, Honolulu, HI, for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION

### BACKGROUND

KAY, District Judge.

On April 19, 1992, the decedent, eleven year old Joshua Covington, accompanied Staff Sergeant Dennis Warren and his family to Bellows Air Force Station beach for an outing. The portion of the beach Joshua and the Warrens visited is closed to the general public. Although there is no admission charge to the beach area, the Warrens paid a charge for use of the picnic area behind the beach. Approximately one thousand persons were using the beach on this date, with about 300 hundred of them swimming or playing in the water. Three lifeguards were on duty: Andrea Borges, assigned to Lifeguard Tower 2; David Keliihananui, assigned to Lifeguard Tower 4; and Jacqueline Macy–Haith, the supervisor, assigned to beach patrol.

During the day, Joshua and the other children spent most of their time playing on the beach and in the water. In the afternoon, the surf began to pick up with up to three foot waves being present. At around 3:30 p.m., a rather large wave came toward the group of children, among them Joshua. Several children, including Joshua, were knocked down. Two other children were pulled out by adults who were in the water, but Joshua did not resurface. One of the adults began looking for Joshua but could not find him.

The facts as to exactly what happened thereafter are disputed. Plaintiff contends that Dennis Warren, Jr. ("Dennis") immediately ran to Lifeguard Tower 4 to seek help for Joshua, only to find that Tower 4 was not occupied. Dennis then searched for another lifeguard and came upon a female lifeguard, believed to be Jacqueline Macy–Haith. This lifeguard allegedly was eating a sandwich and told Dennis "Don't bother me, I'm eating." Some adults then told Macy–Haith that a child was drowning and Macy–Haith told the adults to see if the child was using the restroom.

Around this same time, a boy ran to Tower 2 and told lifeguard Andrea Borges that Joshua was drowning. Borges went immediately to Tower 4 where she encountered Macy–Haith and asked what had happened. Macy–Haith allegedly told her "[j]ust go back to your Tower, you're not needed here."

A search was eventually begun by David Keliihananui, the lifeguard stationed at Tower 4, and private citizens. At some point the waters were cleared of bathers to facilitate the search, however, neither bull horns nor whistles were used to hasten the process. At approximately 4:05 p.m. Joshua's body was found in approximately 18 inches of water. At the time Joshua went under, he was about 35 feet from Tower 4 and he was eventually recovered about 30 feet from the Tower. After Joshua was pulled from the water, the paramedics attempted to clear the water from his lungs. He was then placed in an ambulance and taken to Castle Medical Center, where he was pronounced dead at 5:06 p.m. after resuscitative efforts failed.

Plaintiff Prince Covington filed this action on behalf of himself and the estate of Joshua to seek recovery for the death of Joshua Covington. In count I of the complaint, Plaintiffs allege that the government voluntarily assumed a duty of care to Plaintiffs by posting lifeguards at Bellows Beach and that Plaintiffs reasonably relied, to their substantial detriment, on the conduct of the government and were thereby induced to enter the ocean waters. Plaintiffs further contend that the government negligently failed to act with reasonable care, leading to the damage alleged.

In count II of the complaint Plaintiffs allege that the government had actual knowledge that its lifeguards were inadequately trained and equipped and that its lifeguard staffing was wholly inadequate to provide reasonable care and oversight of foreseeable beachgoers. According to Plaintiffs, the government thus knowingly created and perpetuated a dangerous condition of apparent safety at Bellows Beach. Plaintiffs further

contend that the government wilfully failed to warn beachgoers of this dangerous condition.

In count III, Plaintiffs claim that the government's alleged conduct caused the wrongful death of Joshua and further consequential damages to Plaintiff Prince Covington, including pecuniary loss and the loss of love, affection, companionship, filial care and attention.

The government denies that there was negligence on its part which was causal in the death of Joshua. For the purposes of the current motion to dismiss, however, the government contends that even if there was negligence, Plaintiffs' action is barred by the Hawaii Recreational Use Statute ("HRUS").

## STANDARD OF REVIEW

### I. MOTION TO DISMISS

■ Under Fed.R.Civ.P. 12(b)(6), in determining whether to grant a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini,* 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles,* 797 F.2d 743, 745 (9th Cir.1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Balistreri,* 901 F.2d at 699; *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. *Id.*

■ If, in connection with a defendant's motion to dismiss for failure to state a claim, the Court considers matters outside the pleadings, that portion of the defendant's motion to dismiss should be treated as one for summary judgment. Rule 12(b)(6), Fed. R.Civ.Pro.; *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Coverdell v. Dept. of Social & Health Services,* 834 F.2d 758 (9th Cir.1987).

### II. SUMMARY JUDGMENT

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Electrical. Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral

argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987), *citing, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis original), *citing, Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356. Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services,* 809 F.2d at 630–31.

### DISCUSSION

■ The Federal Torts Claim Act ("FTCA") waives the United States' sovereign immunity from liability for tortious conduct committed by its employees within the scope of their employment. 28 U.S.C. §§ 1346(b), 2671 et seq. (1988). Under the FTCA, the United States is liable for negligence in the same manner and to the same extent as a private individual would be in

similar circumstances. 28 U.S.C. § 2674 (1976); *Richards v. United States,* 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962); *Proud v. United States,* 723 F.2d 705, 706 (9th Cir.1984). Hawaii has in place a Recreational Use Statute (HRUS) which accords private land owners substantial immunity from actions in tort by those who come onto their land for recreational purposes. In particular, Chapter 520 of the HRUS limits the duty of land owners as follows:

> Except as specifically recognized by or provided in section 520–6, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on such premises to persons entering for such purposes. H.R.S. § 520–3.

> Except as specifically recognized by or provided in section 520–6, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby ... extend any assurance that the premises are safe for any purpose. H.R.S. § 520–4.

Although the Hawaii statute defines "land" as "land, roads, water, [etc.] ... other than owned by the government," the FTCA requires that the HRUS limit the United States' liability to the same extent that it limits a private individual's liability. *Proud,* 723 F.2d at 706–07. Regardless of what the state legislature intended, the United States' tort liability is dependent on its waiver of its sovereign immunity as established by the FTCA. *See id.* Accordingly, because the FTCA provides that the United States' liability is that of a private individual, the HRUS must limit the liability of the United States in the same manner that it limits the liability of a private land owner. *Id.* The courts have also held that the HRUS applies to government property that is closed to the general public. *Stout v. United States,* 696 F.Supp. 538, 539 (D.Haw.1987).

■ Immunity under Chapter 520 is not absolute. A land owner will still be liable for "wilful or malicious failure to guard or warn against a dangerous condition, use, or struc-

ture which the owner knowingly creates or perpetuates and for wilful or malicious failure to guard or warn against a dangerous activity which the owner knowingly pursues or perpetuates."[1]   H.R.S. § 520–5.  At least one United States District Court for the District of Hawaii has held that this exception does not require the government to warn of the "per se dangerous natural conditions always existing in ocean waters." *Viess v. Sea Enterprises Corp.*, 634 F.Supp. 226, 230 (D.Haw.1986).  The district court in *Viess* rejected cases from other jurisdictions holding land owners liable for failing to warn of natural conditions because the recreational use laws of those states did not contain Hawaii's limiting language "which the owner knowingly creates or perpetuates." *Id.*  Instead, the *Viess* court held that under Hawaii's statute a land owner is only liable if he wilfully or maliciously fails to guard or warn against a dangerous condition which he knowingly perpetuates.[2] *Id.*; H.R.S. § 520–5.

■  In the case at bar, however, Plaintiffs are not simply arguing that the government failed to guard or warn of the danger of the ocean currents and surf.  Rather, they contend that the government knowingly created a dangerous condition—i.e., a "facade of safety"—by placing too few lifeguards at the beach and inadequately training and equipping those lifeguards that it did post.  According to Plaintiffs, but for the appearance of safety created by the lifeguards, Joshua would not have been permitted to enter the waters.  Plaintiffs also contend that the presence of lifeguards caused some of the adults who were with Joshua to seek aid rather than to immediately conduct their own

search.  Because they claim it was the government's "facade of safety" which resulted in Joshua's death, Plaintiffs contend that the government should be held liable for its failure to exercise reasonable care and its wilful and malicious failure to guard or warn against this potentially dangerous condition.

The Ninth Circuit has addressed a landowner's liability under the HRUS where the land owner has voluntarily taken precautionary measures to ensure the safety of recreational users.  *Palmer v. United States*, 945 F.2d 1134, 1137 (9th Cir.1991).  The plaintiff in *Palmer* brought an action against the government to recover for injuries he sustained when he slipped and fell while descending a flight of stairs at a government-owned pool.  The plaintiff argued that even if the HRUS generally immunized the United States from liability, the government was liable for his injuries because it voluntarily undertook a duty of reasonable care by hiring lifeguards, washing down the steps, and generally maintaining the pool area.  The *Palmer* court rejected this argument, noting that the HRUS precludes all theories of liability based upon mere negligence and provides liability only where conduct is wilful or malicious.  To otherwise provide an exception where a landowner gratuitously undertakes efforts to improve the safety of its property might discourage efforts to make recreational facilities safer. *Id.*

Because this Court is bound by the Ninth Circuit's decision in *Palmer*, it must reject Plaintiffs' contention that the government should be held liable for failing to exercise reasonable care in posting lifeguards at Bellows Beach.  Plaintiffs rely on *Collard v.*

---

1.  The statute also provides for liability where the land owner has charged a fee for use of the land, or where the injured person was a houseguest. H.R.S. § 520–5.  Plaintiffs do not contend that either of these exceptions are applicable.  Clearly, Joshua was not a houseguest.  Moreover, although the Warrens paid to use the picnic area behind the beach, this fee does not trigger the charge exception because it was not a prerequisite to Joshua's entry onto the beach.  *See Viess v. Sea Enters Corp.*, 634 F.Supp. 226, 229 (D.Haw.1986) ("[T]he Hawaii statute ... speaks only to the explicitly quid pro quo arrangement whereby a landowner conditions admission to the land upon payment of a fee.") *Id.*

2.  There is some indication in the legislative history of Chapter 520 that the legislature did not intend the statute to be so limited.  According to the State of Hawaii Senate Standing Committee, Report No. 534 (1969):

This bill would not affect the landowners' common law duty of care towards house guests, business invitees, playmates of children, or if he is guilty of willfully or maliciously failing to guard or warn persons against a dangerous condition or activity on the land.
1969 Senate Journal, p. 1975, SCR No. 534 (emphasis supplied).

*United States,* wherein this Court held that "even if the Recreational Use Statute is applicable, by stationing lifeguards and posting warning flags, the [defendants] may have voluntarily assumed a duty of care." 691 F.Supp. 256, 259 (D.Haw.1988). This Court reasoned that once the defendants assumed the responsibility of providing safety measures, they had an obligation to act with reasonable care.[3] *Id.* at 260. The Ninth Circuit, however, subsequently held that the HRUS precludes *all* liability based on mere negligence—including where a land owner has voluntarily undertaken safety measures. Accordingly, the Court dismisses Count I of Plaintiffs' complaint, alleging that "Defendant voluntarily assumed a duty of care" and "negligently failed to act with reasonable care."

In addition to claiming that the government failed to act with reasonable care, Plaintiffs contend that the government wilfully and maliciously failed to guard or warn against the dangerous condition it knowingly created and perpetuated. In particular, Plaintiffs argue that the government's knowing failure to adequately staff, train and equip its lifeguards amounted to a wilful and malicious failure to guard against the potentially dangerous false appearance of safety. Plaintiffs further contend that the government wilfully and maliciously failed to warn people that the appearance of safety was merely a facade.

■ The Court agrees that a false appearance of safety, created by the placement of inadequate or untrained lifeguards on the beach, might result in a potentially dangerous condition above and beyond the natural danger created by the ocean currents and surf.[4] *See Gonzales,* 130 Cal.App.3d at 886–87, 182 Cal.Rptr. 73 (city "create[d] a dangerous condition by combining a known natural defect within the property and the negligent performance of its directly related, voluntarily-assumed protective service"). Accordingly, the Court finds that the government may be held liable to the extent that it created, and wilfully or maliciously failed to guard or warn against, this danger. The Court notes that such liability offends neither the HRUS nor the Ninth Circuit's holding in *Palmer* because it does not provide for liability based merely on negligence. *See* H.R.S. § 520; *Palmer,* 945 F.2d at 1137.

The Intermediate Court of Appeals of Hawaii has defined wilful as "premeditated; malicious; done with evil intent, or with a bad motive or purpose, or with indifference to the natural consequences; unlawful; without legal justification." *Marshall v. University of Hawaii,* 9 Haw.App. 21, 36, 821 P.2d 937 (1991) (citing Black's Law Dictionary 1434 (5th ed. 1979)). Hawaii courts have not directly defined the term "wilful" as it is used in the HRUS. Since the recreational use statute is in derogation of the common law rules of tort liability, it should be construed strictly so as to "avoid an overbroad interpretation ... that would afford immunity that was not intended." *Ducey v. United States,* 713 F.2d 504, 510 (9th Cir.1983).

Other jurisdictions with recreational use statutes exempting wilful and malicious behavior have directly addressed the term "wilful." California's definition provides the clearest standard and is fairly representative

3. This Court relied on a decision by the Hawaii Supreme Court holding that "even where a municipality is under no duty to provide lifeguard services, yet if it voluntarily assumes this protective responsibility, it has a duty to perform those services with reasonable care." *Kaczmarczyk v. City and County of Honolulu,* 65 Haw. 612, 617, 656 P.2d 89 (1982). The Hawaii Supreme Court in turn cited the California Court of Appeals which held that although a statutory provision freed public entities of the duty of providing any protective service, "once the public entity provides the protective service ... the underlying intent, of the provision of freeing the public entity from the duty of performing protective services, becomes moot." *Gonzales v. City of San Diego* 130 Cal.App.3d 882, 886–87, 182 Cal.Rptr.

73 (1982). A public entity must still exercise reasonable care in performing voluntary protective services. *Id.*

4. The government cited *Fochtman v. Honolulu Police and Fire Departments,* 65 Haw. 180, 649 P.2d 1114 (1982) to support its contention that the government did not have a duty to provide rescue services. However, the Court finds that this case supports Plaintiffs' position in that the *Fochtman* court recognized that even where there is no duty to rescue, some liability may arise where one party puts the other party in a worse condition by voluntarily rendering assistance. *See id.* at 183, 649 P.2d 1114.

of the definitions of other jurisdictions that have addressed the issue. *See, Termini v. United States*, 963 F.2d 1264, 1267 (9th Cir. 1992) (applying California's recreational use statute); *see also, Bell v. Alpha Tau Omega Fraternity*, 98 Nev. 109, 642 P.2d 161, 162 (1981) (applying Nevada's recreational use statute); *Jones v. United States*, 693 F.2d 1299, 1304 (9th Cir.1982) (applying Washington's recreational use statute); *Miller v. United States*, 945 F.2d 1464, 1467 (9th Cir. 1991) (applying Arizona's recreational use statute). The California courts have set out three essential elements that must be present before a negligent act becomes wilful misconduct:

> (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril.

*E.g., Termini*, 963 F.2d at 1267.

■ Unlike where a party is pleading negligence, the Court will not presume wilful misconduct. *Hannon v. United States*, 801 F.Supp. 323, 328 (E.D.Calif.1992). Rather, Plaintiffs have the burden of specifying the particular acts which demonstrate the wilful misconduct. *Id.* Moreover, although summary judgment should be granted with caution in cases in which wilfulness is an issue, to survive summary judgment Plaintiff must establish a genuine issue of fact whether the conduct alleged was wilful as opposed to merely negligent. *See Miller*, 945 F.2d at 1467.

Plaintiffs allege the following as evidence of the government's wilful misconduct:

> (1) That the government posted only three lifeguards when Air Force regulations require 6 lifeguards and a military study conducted in 1986 suggests that based on the number of beachgoers present on April 19, 1992, 15–17 lifeguards should have been on duty;
>
> (2) That the lifeguards were not adequately trained or equipped.

> (3) That lifeguard Keliihananui was absent from his assigned Tower at the time of the accident, in violation of Air Force regulations which require lifeguards to remain at their posts unless authorized to leave by a Supervisor or in the event of an emergency.
>
> (4) That lifeguard Macy–Haith wilfully and maliciously refused to render assistance when informed that Joshua was drowning, in violation of an Air Force regulation providing that one of the most important responsibilities of a lifeguard is the rescue and care of accident victims.
>
> (5) That the lifeguards did not use bull horns or whistles in clearing the water although Air Force regulations require that lifeguards be equipped with such instruments to facilitate clearing of the waters in an emergency.
>
> (6) That the lifeguards were not wearing clothing which readily identified them as lifeguards.

■ The government's failure to observe its own safety standards regarding the number of lifeguards which should be posted is important evidence in determining that it possessed constructive knowledge that injury would likely occur.[5] *See Termini*, 963 F.2d at 1267 (United States Forest Service's failure to post a warning sign where its own manual indicated that it should do so was evidence that it had constructive knowledge of the significant risk created by its actions); *Rost v. United States*, 803 F.2d 448, 452 (9th Cir.1986) (United States Forest Service's failure to maintain gate in compliance with its safety regulations was evidence that it had constructive knowledge of the danger the condition of the gate presented to motorists.) Plaintiff has submitted evidence that Air Force regulations require that six lifeguards be on duty at Bellows, and that prior to 1991, nine lifeguards were required. Exhibit 14, attached to Plaintiffs' memorandum in opposition [hereinafter Plaintiffs' Exhibit 14]. However, although April 19, 1992 was a holiday weekend, the government posted only half the required number. This evidence suggests that the government had construc-

---

**5.** Hawaii does *not* recognize a statutory violation as negligence per se. Rather, it is only evidence of negligence. *Chainey v. Jensen*, 1 Haw.App. 94, 96, 614 P.2d 402 (1980).

tive, if not actual, knowledge that the number of lifeguards posted was inadequate to protect bathers and that such understaffing created a potentially dangerous condition. It also raises a genuine issue of fact whether the government had actual or constructive knowledge that injury to bathers was a probable result of the understaffing. Moreover, there is a genuine issue of fact whether the government consciously failed to act to avoid the danger by providing additional lifeguards.

■ Plaintiffs have not submitted evidence regarding the training provided to the lifeguards nor any expert testimony evaluating the training. However, the actions of the individual lifeguards arguably create an issue as to whether they were properly trained. Keliihananui was away from his station "much of the afternoon" in violation of regulations. Plaintiffs' Exhibit 4. There is also evidence that he was seen wandering the beach in a distracted manner. *See* Plaintiffs' Exhibit 10. Likewise, Plaintiffs allege Macy–Haith refused to render immediate assistance. Affidavit of Dennis Warren, Jr., errata to Plaintiffs' memorandum. Plaintiffs further claim that the lifeguards did not use whistles or bullhorns to hasten clearing the water of bathers so that a search could be conducted. Affidavit of David J. Gierlach, attached to Plaintiffs' memorandum in opposition. In light of this evidence, the Court finds that there is a genuine issue of fact whether the government inadequately trained its lifeguards. The Court notes, however, that Plaintiffs must ultimately prove more than that the lifeguards were not properly performing their jobs. They must prove that the lifeguards were inadequately trained and that this failure to provide sufficient training was wilful.

■ Except to the extent that the individual lifeguards' actions suggest that they were inadequately trained, these allegations are not relevant to the issue of whether the government wilfully failed to guard or warn

against a false appearance of safety. Rather, the government's liability depends on the actions and actual or constructive knowledge of the government. Therefore, Plaintiffs' allegations that Macy–Haith and Keliihananui acted wilfully and maliciously do not directly support a finding that the government's alleged failure to guard or warn against a false appearance of safety was wilful.[6]

Plaintiffs have failed to submit probative evidence that the lifeguards were not adequately equipped. Plaintiffs merely note that the lifeguards did not use whistles or bull horns to clear the water. Plaintiffs have also not cited any government regulation or other evidence which would suggest that the government wilfully failed to require the lifeguards to wear particular attire. If Plaintiffs wish to assert these allegations at trial, they must come forward with supporting evidence.

In conclusion, the Court finds that there is a genuine issue of fact whether the government created, and wilfully failed to guard or warn against, a potentially dangerous condition—i.e., a false appearance of safety. The Court notes that to prove liability Plaintiffs must ultimately show that the alleged failure to guard or warn against the danger actually caused Plaintiffs' harm.

### CONCLUSION

For the foregoing reasons, this Court DENIES in part and GRANTS in part, Defendant's motion to dismiss or, in the alternative, for summary judgment. Count I of the complaint is hereby dismissed and Paragraph 9 of the complaint is stricken.

IT IS SO ORDERED.

---

6. In his affidavit, Attorney David Gierlach makes some vague allegations regarding racial animus and requests that this court grant leave under Rule 56(f) for them to depose witnesses to determine whether their was any racial animus on the part of Macy–Haith. However, Plaintiffs have not presented, and the Court cannot find, any manner in which such racial animus is relevant to this motion or the allegations pled by Plaintiffs.