**Eric A. LINDGREN and Nancy Lindgren, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 79–3611.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1981.

Decided Jan. 15, 1982.

Gary W. Nevers, Hodge & Skoog, Los Angeles, Cal., for plaintiffs-appellants.

Michael Wolfson, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellee.

Before BROWNING and NELSON, Circuit Judges, and MUECKE,* District Judge.

MUECKE, District Judge:

On September 28, 1974, plaintiff Eric A. Lindgren was water skiing on a section of the Colorado River, south of Parker Dam. While making a run, plaintiff's ski struck the river bottom, throwing plaintiff forward and causing him serious physical injury.

Plaintiffs filed their First Amended Complaint on February 26, 1979. The complaint named the United States as defendant and sought damages pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, for personal injury, negligent infliction of emotional distress and loss of consortium. Plaintiff's complaint alleged that the U.S. Bureau of Reclamation, the agency in control at Parker Dam, had artificially altered the flow, the water level and the riverbed configuration of the Colorado River, and had thereby created a dangerous condition for users of the river. Plaintiffs further alleged that the Bureau had knowledge of the recreational use of the river and of the hazards posed to such users by the Bureau's alteration; it was alleged that despite this knowledge, the Bureau had failed to post any warnings as to the dangerous condition of the river.

On May 25, 1979, the United States moved for summary judgment. The Government's motion was based, in part, on the discretionary function exemption to the FTCA, 28 U.S.C. § 2680(a), which provides in pertinent part:

> The provisions of this Chapter and Section 1346(b) of this title shall not apply to—(a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

On August 9, 1979, the trial court entered summary judgment in the Government's favor. In so doing, the Court held that the operation of Parker Dam constituted a discretionary activity within the meaning of the above statute and cited *Spillway Marina, Inc. v. United States*, 445 F.2d 876 (10th Cir. 1971).

Plaintiffs do not contest the trial court's conclusion as to the discretionary character of dam operations. Their sole contention is that the Government's failure to warn was not such an activity, and therefore that the trial court erred in entering summary judgment in the Government's favor.

It may well be that the trial court's ultimate conclusion as to the discretionary character of the Government's failure-to-warn was correct. It may also be that even if the Government's failure is found nondiscretionary, the trial court will conclude that under the present circumstances, the Government was under no duty to warn. The problem with the Court's ruling was its assumption that simply because the hazard which allegedly caused plaintiff's injury was created through the exercise of a discretionary function, the Government's failure-to-warn of the hazard was also discretionary. The trial court's *per-se* approach to the issue was in error.

The leading decision interpreting the discretionary function exemption is *Daleh-*

---

* Honorable C. A. Muecke, Chief Judge, United States District Court for the District of Arizo- na, sitting by designation.

*ite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In that case, the Court established that the purpose of the exemption was to permit the Government to make planning-level decisions without fear of suit. *Id.* at 32, 73 S.Ct. at 966. According to the Court,

> one only need read § 2680 in its entirety to conclude that the Congress exercised care to protect the Government from claims, however negligently caused, that affected the governmental functions.

*Id.* at 32, 73 S.Ct. at 966. Although the *Dalehite* Court declined to define the outer limits of "discretion", it did go so far as to hold that discretion

> includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or non action being directed by the superior, exercising, perhaps abusing, discretion.

*Id.* at 35–36, 73 S.Ct. 968. (Footnote omitted.)

Although *Dalehite* remains an important statement of the policy behind the discretionary function exemption, subsequent decisions by the Supreme Court and various circuit courts have operated to narrow *Dalehite*'s definition of the term "discretion." *See e.g., Payton v. United States,* 636 F.2d 132, 137–38 (5th Cir. 1981); *Aretz v. United States,* 604 F.2d 417, 427 (5th Cir. 1979); *Bernitsky v. United States,* 620 F.2d 948, 951 (3d Cir. 1980).

The prevailing test in the Ninth Circuit asks whether the act or omission occurred on the "planning level" of governmental activity or on the "operational level:"

Not every discretionary act is exempt. Obviously, attending to many day-to-day details of management involves decisions and thus some element of discretion. The exercise of this kind of discretion does not fall within the discretionary function exemption. The distinction generally made in the application of the discretionary function exemption is between those decisions which are made on a policy or planning level, as opposed to those made on an operational level.

*Thompson v. United States,* 592 F.2d 1104, 1111 (9th Cir. 1979). *See also Driscoll v. United States,* 525 F.2d 136, 138 (9th Cir. 1975). In addition to examining the level at which the act/omission occurred, this Court has also considered the ability of the judiciary to evaluate the agencies' act/omission and whether judicial evaluation would impair the effective administration of the Government. *See Driscoll v. United States, supra,* at 138.

Plaintiffs cite several cases for the proposition that if the exercise of a discretionary function creates or facilitates a hazard, the Government's duty to warn can be actionable—notwithstanding the discretionary character of the hazard-causing act/omission. *See e.g., Smith v. United States,* 546 F.2d 872 (10th Cir. 1976) (Yellowstone Park visitor falls into thermal pool: decision to open park and decision whether to leave an area of park undeveloped were discretionary, but "the decision as to the posting of warning signs in the area must be judged separately . . . ."); *United States v. State of Washington,* 351 F.2d 913 (9th Cir. 1965) (Aircraft hits unmarked electrical power line: even assuming location and erection of line was discretionary function, failure to provide suitable warning device was actionable); *United Air Lines, Inc. v. Wiener,* 335 F.2d 379 (9th Cir. 1964), *cert. dism. sub nom. United Air Lines, Inc. v. United States,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964) (Air Force jet hits commercial airliner: under circumstances, failure to warn airliner of hazards created by instrument landing procedure being used by jet was actionable); *United States v. White,* 211 F.2d 79 (9th Cir. 1954) (Business invitee injured by

unexploded shell while collecting scrap metal on Army firing range: assuming that decision not to undertake removal of hidden dangers was discretionary, the Government's failure to warn of the known danger the invitee was likely to encounter was not); *Everitt v. United States*, 204 F.Supp. 20 (S.D.Tex.1962) (Boat accident: placement of log piles in bay for surveying purpose was discretionary, but failure to discover submerged pilings and warn thereof was not); *Hernandez v. United States*, 112 F.Supp. 369 (D.Hawaii 1953) (Vehicle accident: Government's decision to erect road block was discretionary, but failure to adequately warn travellers was not); *Worley v. United States*, 119 F.Supp. 719 (D.Ore.1952) (Injury to hunter: Government's decision to use coyote traps was discretionary, but failure to warn humans of danger was not).

The Government would distinguish plaintiffs' cases on the basis that they did not involve dam operations. Under the Government's theory, pursuant to the FTCA, Congress intended to place dam operations on a higher level than other "discretionary functions." Failure to warn of hazards created by dam operations would never be actionable; it would always assume the discretionary character of the hazard-causing activity.

In support of its contentions, the Government relies on the following portion of the House Report of the Committee that adopted § 2680(a):

This is a highly important exception, intended to preclude any possibility that the bill might be construed to authorize suit for damages against the Government growing out of an authorized activity *such as* a flood-control or irrigation project, where no negligence on the part of any Government agent is shown, and the only ground for suit is the contention that the same conduct by a private individual would be tortious, or that the statute or regulation authorizing the project was invalid.

H.R.Rep.No. 2245, 77th Cong., 2d Sess., p. 10, *quoted* in *Dalehite v. United States*, 346 U.S. at 29 n. 21, 73 S.Ct. at 964. (Emphasis added). The Government also relies on several water cases which refer to the above language. *See Wright v. United States*, 568 F.2d 153 (10th Cir. 1978) (No liability to plaintiffs whose car crashed into creek: Government's act of assisting state with planning and construction of bridge was discretionary, insulating it from claim that negligent design, construction and placement caused bridge to wash out); *Konecny v. United States*, 388 F.2d 59 (8th Cir. 1967) (Government not liable for "taking" plaintiff's shoreline property by raising the water level of lake); *Coates v. United States*, 181 F.2d 816 (8th Cir. 1950) (Government not liable for damage to farmer's land by changing flow of river to improve transportation waterway).

While it is clear from the above history that Congress intended dam operations to fall within the scope of the discretionary function exception, we find no indication that dam operations are elevated to a position different from any other discretionary function.

The cases cited by the Government suggest nothing to the contrary. None involved allegations of failure to warn. They simply establish what plaintiffs have already conceded—that the Government's regulation of the river was a discretionary function.

The Government's most persuasive case is *Spillway Marina, Inc. v. United States*, 330 F.Supp. 611 (D.Kan.1970), *aff'd*, 445 F.2d 876 (10th Cir. 1971). But that case too is distinguishable.

Plaintiff in *Spillway* had a state concession to operate a marina on the banks of a federal reservoir. In the fall of 1966, it became necessary for the Corps of Engineers to lower the water level of the reservoir to maintain the navigational quality of the Missouri River and to accomplish some construction and repair work. The marina's complaint alleged that this drawdown damaged its dock facilities and that it was done without authority, without warning, and in violation of the marina's concession agreement.

The district court held that the Government's decision to lower the water level was clearly a discretionary function. 330 F.Supp. at 612–13. In response to plaintiff's argument that it was lack of notice, rather than the actual lowering of the water level, that caused the damage, the court stressed that notice would be highly impractical:

> This position is untenable. The decision of when to lower the reservoir, and how much to lower it, is one which depends upon a great number of variable factors, such as navigation conditions and needs, irrigation requirements, rainfall, etc. This decision must be made and altered from day to day, if not oftener. It would be inaccurate, if not impossible, to predict what action might be taken at some future date. Likewise, it would be equally difficult to predict the water level of the reservoir at some future date. Further to argue whether the act of the lowering of the water level, or the failure of specific notice thereof, is the negligent act, is an exercise in semantics, since both are a part of the total conduct within the statutory connotation of a discretionary function.

*Id.* at 613.

On appeal to the Tenth Circuit, plaintiff withdrew his argument that the drawdown was unauthorized and placed sole reliance on his argument that the Government was negligent for failing to warn that the drawdown would occur. The Tenth Circuit affirmed, emphasizing that the decision when to release and store water required discretion, and reasoning that "the argument of Spillway goes to the manner of exercise of a discretionary function." 445 F.2d at 878.

This Court rejects the Government's reading of *Spillway* as standing for the proposition that, in the dam context, all failure to warn assumes the discretionary cloak of the operation itself. While it is indeed possible that a particular failure to warn might be discretionary, each failure must be analyzed separately.

In *Spillway*, the exercise of discretion (*i.e.*, the lowering of the water level) was primarily responsible for the damage for which plaintiff brought suit. In the case before this Court, the discretionary act did not produce any direct damage—it produced a hazard. The damage required an act on plaintiff's part (water skiing). In this respect, the *Spillway* case is more aligned with the cases cited by the Government that did not involve failure to warn. This case, however, is more analogous to the authority relied on by plaintiff. *E.g., White v. United States, supra.*

To permit recovery in a *Spillway* situation would require the Government to analyze *each* act of discretion to determine (1) whether it would damage anyone, (2) whether a warning would reduce that damage, and (3) whether warnings would be feasible under the circumstances. To oblige the Government to ask these questions before each discretionary act would seem to constitute a great interference with Governmental administration. Under the facts of *Spillway*, for example, the Government would have had to warn the marina, and all other persons who would suffer damage from a lowering of the water level, *each time* the water level was lowered.

In contrast, the "hazard" cases often require only one-time warnings, and are therefore not as administratively burdensome. *See e.g., Smith v. United States, supra; United States v. State of Washington, supra.* In the present case, for example, plaintiff would have the Government post signs informing the public that the Government is causing the water level to fluctuate without notice, and that the public should beware of dangers that might be caused thereby. The Government is not, as in *Spillway*, being asked to notify the public each time it changes the water level in a manner so as to threaten damage.

### Conclusion

This matter should be remanded to the trial court for its consideration whether, under the prevailing test in this Circuit, the Government's failure to warn was discretionary. *See Thompson v. United States, supra; Driscoll v. United States, supra.*

It must be remembered that the question whether the discretionary function exemption applies is simply one of subject matter jurisdiction. *See Smith v. United States, supra,* at 875–76; *United States v. White, supra,* at 82, note 3. A finding that the Government cannot use the exemption in no way affects the questions (1) whether the Government's failure to post signs constituted negligence, *see Payton v. United States, supra,* at 144, or (2) whether the Government's failure is actionable under state law, as required by the FTCA. *See e.g., United Scottish Ins. Co. v. United States, supra; Phillips v. United States,* 590 F.2d 297 (9th Cir. 1979).

REMANDED for further consideration in accordance with the views expressed in this Opinion.