Mabel NEVIN, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 81–4365.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1982.

Decided Jan. 17, 1983.

---

Edward J. Nevin, San Francisco, Cal., Allan Jay Favish, Fogle, Rothschild, Feldman & Ostrove, Los Angeles, Cal., for plaintiffs-appellants.

George C. Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendant-appellee.

Before CHOY and NORRIS, Circuit Judges, and SMITH,* District Judge.

CHOY, Circuit Judge:

Relatives of Edward Nevin appeal from a judgment in favor of the United States in this wrongful-death action brought under the Federal Tort Claims Act (the FTCA), 28 U.S.C. § 1346(b). They claim that Nevin died as a result of the Government's negligence in conducting a simulated biological warfare attack on the City of San Francisco in 1950. The district court concluded in part that the Government was immune from suit because its acts fell within the discretionary function exemption to the FTCA, 28 U.S.C. § 2680(a).

On appeal, the Nevins concede that the selection of the test site fell within the discretionary function exemption, but argue that the selection of the strain of bacterium used did not. Even assuming that we should isolate the selection of the strain of bacterium from the selection of the site, we conclude that the decision to use the particular strain was exempt as a discretionary function.

The discretionary function exemption provides, in pertinent part, that the United States has not waived sovereign immunity on

[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The purpose of the exemption is to permit the government to make planning-level decisions without fear of suit. *Dalehite v. United States,* 346 U.S. 15, 32, 73 S.Ct. 956, 966, 97 L.Ed. 1427 (1953); *Lindgren v. United States,* 665 F.2d 978, 980 (9th Cir.1982).

In this circuit, whether an act or omission falls within the exemption depends generally on whether that act or omission occurred at the planning level or the operational level of government. *Weiss v. Lehman,* 676 F.2d 1320, 1322 (9th Cir.1982), cert. denied, —— U.S. ——, 103 S.Ct. 725, 74 L.Ed.2d 953 (1983); *Lindgren,* 665 F.2d at 980. In making the determination, we have also considered the ability of the judiciary to evaluate the act or omission and whether the judicial evaluation would impair the effective administration of the government. *Lindgren,* 665 F.2d at 980 (*citing Driscoll v. United States,* 525 F.2d 136, 138 (9th Cir.1975)).

There is ample evidence in the record to support the conclusion that the decision by the Chief Chemical Officer, General Anthony McAuliffe, to use the particular

---

* The Honorable Russell E. Smith, Senior United States District Judge for the District of Montana, sitting by designation.

strain of bacterium was made at the planning level. It is undisputed that General McAuliffe was responsible for the final authorization of *all* test plans concerning biological warfare vulnerability. He made the decision to use San Francisco as the site. He personally approved the selection of *serratia marcescens* recommended by scientific and medical advisory personnel. That approval came only after General McAuliffe and one of his fellow officers conducted independent evaluations concerning the safety of the strain of bacterium. The final decision of whether to proceed with any given test or program rested with General McAuliffe and, as the district court noted, "although he tended to rely on his technical advisors he was not bound to do so.... General McAuliffe could have withheld his approval for the test for any reason, including the technical advice he was given or simply on his own judgment as to the inadvisability of conducting the test." Indeed, General McAuliffe himself rejected the plan to conduct a test using the same strain in the subways of New York.

In making the decisions concerning the testing, including which strain of bacterium to use, General McAuliffe had to weigh numerous factors, including concerns for national security, a need for secrecy, the possible risks of urban testing, and applicable medical concerns. As the Nevins admit, the higher the governmental rank involved in making any decision of this type, the more likely it is that political, social, military and economic factors were weighed. Upon careful reflection, we do not think that this court is equipped to weigh the type of factors involved in such a basic policy determination. In addition, our review would likely impair the effective administration of government programs believed to be vital to the defense of the United States at the time that they are conducted.

█ In summary, none of the considerations we examine to determine the applicability of the discretionary function exemption calls for reversal of the district court's determination. Whether the discretionary function exemption applies, however, is a question of subject-matter jurisdiction. *Lindgren,* 665 F.2d at 983. We must, therefore, vacate the judgment of the district court and remand the case with instruction to dismiss the action for lack of subject-matter jurisdiction.

VACATED and REMANDED.

NORRIS, Circuit Judge, dissenting:

I cannot agree that General McAuliffe's decision to use a particular strain of bacterium in conducting a simulated biological attack on the City of San Francisco falls within the discretionary function exemption to the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1976).

That decision, in my view, was made at the operational, not the planning level of government. As appellant readily concedes, the decision to conduct a simulated attack on San Francisco was a planning decision that did fall within the exemption. It required the weighing of political, social and military factors and, as such, is a decision the judiciary is ill-equipped to review. But once that policy decision was made, its execution necessarily involved a myriad of decisions at the operational level which are not insulated from judicial review.[1] The choice of bacterium was one such decision. 8 UK was chosen not on the basis of politi-

1. See *S.A. Emprasa De Viacao Aerea Rio Grandense v. United States,* 692 F.2d 1205, 1208 (9th Cir.1982) ("The discretionary function exemption was primarily intended to preclude tort claims arising from decisions by executives or administrators when such decisions require policy choices."); *Miller v. United States,* 583 F.2d 857, 866 (6th Cir.1978) ("The discretionary function exception does not insulate the Government from liability for all mistakes of judgment of its agents, but only for significant policy and political decisions, the types of governmental decisions which should not be circumscribed by customary tort standards."); *Griffin v. United States,* 500 F.2d 1059, 1066 (3d Cir.1974) ("Where the conduct of Government employees in implementing agency regulations requires only performance of scientific evaluation and not the formulation of policy, we do not believe that the conduct is immunized from judicial review as a 'discretionary function.'")

cal or military concerns, but on the basis of medical and scientific ones. Care had to be exercised in selecting a bacterium that would not constitute a health hazard. Whether there was failure to exercise due care in making that decision is the type of question frequently subjected to judicial scrutiny. *See United States v. DeCamp,* 478 F.2d 1188 (9th Cir.), *cert. denied* 414 U.S. 924 (1973); *Hendry v. United States,* 418 F.2d 774, 783 (2d Cir.1969) ("[t]he judgments arrived at by the doctors are not different in complexity from those which courts are accustomed to entertain when tort suits are brought against private physicians.")

I would hold that the district court had subject matter jurisdiction over plaintiff's action, but would affirm the judgment on the ground that the district court's finding that the bacteria used by the Army did not cause Nevin's death was not clearly erroneous.