**Decided May 24, 1984**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

MARUYAMA & ASSOCIATES, LTD.,    )    CIVIL ACTION NO. 82-0066
                                )
               Plaintiff,       )
                                )
          v.                    )           DECISION
                                )
MARIANA ISLANDS HOUSING         )
AUTHORITY and SUMITOMO CORP.,   )
                                )
               Defendants.      )
_____ )

I.

The facts giving rise to this action are set forth in the Court's previous decision regarding defendants' motions for summary judgment (Maruyama & Associates v. Mariana Islands Housing Authority, et. al., Civil Action No. 82-0066 (D.N.M.I. Decision filed October 26, 1983)). The facts relating to the claims against the Mariana Islands Housing Authority (MIHA) and relevant to this decision are repeated briefly here. Sometime prior to May 1982, MIHA decided to erect a 300 house turn-key project on the old Kobler air strip, now known as "Koblerville." According to Maruyama, in May of 1982 MIHA solicited bids for the project; Maruyama submitted its bid, but was not awarded the contract.

On November 22, 1982, Maruyama filed this action. By

998

its amended complaint, Maruyama alleged against MIHA breach of express and implied contract, violation of its rights to due process and equal protection, fraud, and violation of public policy. MIHA filed a motion to dismiss or, in the alternative, for summary judgment. In its disposition of these motions, the Court granted summary judgment on the breach of contract claims and denied the motions as to the constitutional and fraud claims as questions of material fact remained. The public policy claim was dismissed for lack of standing.

On November 23, 1983, the Court raised, sua sponte, questions of its subject matter jurisdiction in this matter, requesting the parties to provide memoranda on the scope of the Commonwealth's governmental immunity in this action. Specifically, the Court was concerned with Sections 252(2) and 252(5) of Title 6 of the Trust Territory Code (TTC). Subsequently, MIHA filed a motion to dismiss based on its reading of these sections. The parties filed memoranda on the issue and the Court heard the oral arguments of counsel on January 27, 1984. The Court now renders its decision as set forth herein.

II.

The provision regarding MIHA's immunity from suit reads:

> The Government of the Northern Mariana Islands hereby gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract,

999

> claim or obligation arising out of
> its activities under this Act and
> hereby authorized [sic] the Au-
> thority to agree by contract to
> waive any immunity from suit which
> it might otherwise have.

Public Law 5-67, § 5-2. This Court in its Memorandum Decision in Joaquin Atalig v. Mariana Islands Housing Authority, Civil Action No. 78-27 (D.N.M.I. Oct. 31, 1979) interpreted the language of P.L. 5-67 to conclusively demonstrate that absent an agreement by MIHA to the contrary , MIHA was within the Commonwealth's governmental immunity and subject to liability only as set forth at 6 TTC § 251 et. seq.

This Court is aware that the concept of sovereign immunity is currently the subject of serious question. The "modern trend of legislative policy and judicial thought is toward the abandonment of the monarchistic doctrine of sovereign and governmental immunity." Civil Actions Against State Government §§ 2.5-2.6 (Shepard's/McGraw-Hill, 1982); see generally L. Jaffe, Suits Against Governments and Officers: Sovereign Immunity, 77 Harvard Law Review 1 (1963)(modern concept of sovereign immunity rests on misunderstanding of the doctrine as it developed in England; history of doctrine does not support modern use of the immunity). However, the doctrine continues to be recognized by the United States Supreme Court. Civil Actions Against State Government, supra, at § 2.10. Assuming the validity of the concept, there also exists a great deal of confusion regarding the nature and scope of governmental immunity as it applies to

public corporations. Compare Federal Housing Administration v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 725 (1940) and Payne v. Panama Canal Co., 607 F.2d 155, 163 (5th Cir. 1979) (immunity of federal public corporation to be determined from legislative intent) with Specter v. Commonwealth of Pennsylvania, 341 A.2d 481 (Penn. 1975) and Civil Actions Against State Government, supra p.3, at § 2.30 (Shepard's/McGraw-Hill, 1982)(focal point in addressing question of immunity of state public corporation is relationship of agency to state; specifically, courts examine autonomy of corporation to determine whether state is real party in interest). Considering the unsettled state of the law and the absence of persuasive arguments by Maruyama, the Court at this time is unwilling to overrule its decision in Atalig. Accordingly, the claims asserted by Maruyama are viewed against the Commonwealth's statutory immunity.

III.

Maruyama assets a claim against MIHA for fraud. 6 TTC § 252 reads in relevant part:

> The [court] shall not have juris-
> diction... of:
>
> (5) Any claim arising out of
> assault, battery, false im-
> prisonment, false arrest, mali-
> cious prosecution, abuse or
> [sic] process, libel, slander,
> misrepresentation, deceit or
> interference with contract
> rights. [Emphasis added].

1001

The legislative history of this section demonstrates an intent to follow the Federal Tort Claims Act (28 U.S.C. §§ 2671-80). Ikosia v. Trust Territory, 7 TTR 274, 277 (Tr.Div.)(High Court 1975). 28 U.S.C. § 2680(h) parallels, verbatim, 6 TTC § 252(5). That section of the Federal Tort Claims Act has been interpreted to exclude all claims of fraud. Genson v. Ripley, 544 F.Supp. 251, 253 (D.Ariz. 1982), aff'd, 681 F.2d 1240 (9th Cir. 1982), cert. denied, ____ U.S. ____, 103 S.Ct. 245, 74 L.Ed.2d 193 (1982); see also United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961); Moon v. Takisaki, 501 F.2d 389 (9th Cir. 1974); Green v. United States, 629 F.2d 581 (9th Cir. 1980). Accordingly, the claim against MIHA sounding in fraud is dismissed.

## IV.

Maruyama also asserts a claim against MIHA for infringement of its rights to due process and equal protection as guaranteed under the 14th Amendment to the United States Constitution. The Court rejects MIHA's assertion that this claim is barred by the Commonwealth's immunity.

A claim to enforce federal rights is not barred by a state's assertions of sovereign immunity as such would violate the principles of federalism embodied in the Supremacy Clause of the United States Constitution. Civil Actions Against State Government, supra, p.3, at § 2.16, p.34. Cf. Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44

L.Ed.2d 295, 304 (1975)(considerations of state law may be dis-
placed when their application would be inconsistent with the
federal policy underlying the cause of action in question); San
Diego County District Council of Carpenters v. Cory, 685 F.2d
1137 (9th Cir. 1982)(court will not apply state statute of
limitations if such would unduly qualify or diminish a federal
right).[1]    Therefore, the claim set forth in Count II for
constitutional violations is not prohibited by the Commonwealth's
sovereign immunity.[2]

V.

        Lastly, the Court addresses Maruyama's assertion of
claims sounding in contract.  In its decision of Oct. 26, 1983,
supra p.1, at 7-9, the Court found that Maruyama had stated a
claim for breach of an implied contract.  However, the Court
granted summary judgment in favor of MIHA as it found that

———————————

[1] Although the Supremacy Claus (Art. VI, Cl. 2) is not one of the
    provisions made applicable to the Commonwealth in Section
    501(a) of the Covenant to Establish the Commonwealth of the
    Northern Mariana Islands in Political Union with the United
    States of America, (P.L. 94-241, 90 Stat. 263, reprinted at 48
    U.S.C. § 1681 note (1976)), Section 102 of the Covenant makes
    those provisions of the Constitution, treaties and laws of the
    United States applicable to the Northern Mariana Islands the
    supreme law of the land; the 14th Amendment is applicable
    through Section 501.

[2] Although not raised by MIHA, it is noted here that an action in
    this Court against the Commonwealth pursuant to 42 U.S.C. §1983
    is not barred by the Eleventh Amendment.  Island Aviation, Inc.
    v. Mariana Islands Airport Authority, Civil Action No. 81-0069
    (D.N.M.I. May 26, 1983).

Maruyama had not supported its allegations of unjust enrichment. The Court has reconsidered this decision and has determined that its interpretation of the applicable law was in error; therefore, the summary judgment decision as to the claim on an implied contract is vacated and the claim is reinstated.

An invitation to bid, followed by a submission of a bid, creates an implied contract obligating the government to consider the bid fairly and honestly. Armstrong & Armstrong, Inc. v. United States, 514 F.2d 402, 403 (9th Cir. 1975); McCarty Corp. v. United States, 499 F.2d 633, 637 (Ct.Claims 1974). This principle follows from Section 90 of the American Law Institute's Restatement of the Law-Contracts 2d (hereinafter Restatement):

> (1)  A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Under this section, unjust enrichment of the promisor is not an element of a claim on an implied contract. While the promisee may recover his or her "restitution interest" (that benefit conferred on the promisor), he may also recover his "expectation interest" (benefit of the bargain) or his "reliance interest" (recovery for loss caused by reliance) as justice requires. Re-

///

///

statement § 344.[3/]   The value of the reliance interest is held by the Court of Claims to be the proper measure of recovery on a breach of an implied promise claim such as the one at issue here:

> [I]f an unsuccessful bidder is able to prove that [the implied contract] was breached and he was put to needless expense in preparing his bid, he is entitled to recover his bid preparation costs in a suit against the Government [citation omitted].

McCarty Corporation v. United States, 499 F.2d at 637.

- - - - - - - - -

[3/] § 344 reads:

Judicial remedies under the rules stated in this Restatement serve to protect one or more of the following interests of a promisee:

(a) his "expectation interest," which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed,

(b) his "reliance interest," which is his interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract had not been made, or

(c) his "restitution interest," which is his interest in having restored to him any benefit that he has conferred on the other party.

See also § 345 for discussion of remedies available for the protection of these interests.

A question remains as to the jurisdiction to entertain this claim in light of 6 TTC § 252(2).[4/]   That section reads in relevant part:

> The [court] shall not have jurisdiction... of:   (2)   any   claim based... upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of any agency or   employee   of   the   government, whether or not the discretion involved be abused.

Federal courts have had many opportunities to interpret this "discretionary function" exception.[5/]   The purpose of the exception is to allow planning level decisions to be made without fear of suit.   Lindgren v.United States, 665 F.2d 978, 980 (9th Cir. 1982).   Of course, not every discretionary act is included under the section as every decision, even in the performance of day-to-day affairs, necessarily involves some amount of discre-

— — — — — — — — — —

[4/] Initially, the Court notes its concern as to the applicability of this section to non-tort claims.  As stated above, the legislative history of this section demonstrates an intent to follow the Federal Tort Claims Act.  The parallel section, 28 U.S.C. § 2680(a), applies to tort claims only and not to claims on contract.  The Government Liability Act of 1983 repealed 7 TTC §§ 251 et. seq., and replaced them with a modified law, now codified as 7 CMC § 2201 et. seq..  Under the new law, the tort claims provisions, including the same exception at issue here, are separated from other claims (although the wording of Article 2 (§ 2251 et. seq.) still creates confusion as to the applicability of the exceptions to contract claims).  However, since the Court finds that the acts alleged here were not based upon the performance of a discretionary function, the Court need not rule on this underlying question.

[5/] 6 TTC § 252(2) parallels 28 U.S.C. § 2680(a).

1006

tion.  The distinction developed by the Ninth Circuit is drawn between those decisions made on a policy and planning level as opposed to those made on an operational level.  Thompson v. United Stated, 592 F.2d 1104, 1111 (9th Cir. 1979); Jablonski by Pahls v. United States, 712 F.2d 391, 395 (9th Cir. 1983).  See also Lindgren v. United (citing, inter alia, Smith v. United States, 546 F.2d 872 (10th Cir. 1976)(decision to open Yellowstone Park and decision to leave some areas undeveloped were discretionary, but decision regarding posting of warning signs was not covered by exception) and United States v. State of Washington, 351 F.2d 913 (9th Cir. 1965)(even assuming location of electrical power line was discretionary function, failure to adequately provide warning device was actionable)).  In addition to examining whether the decision was made at the planning or operational level, the Ninth Circuit has also considered "the ability of the judiciary to evaluate the agencies' act/omission and whether judicial evaluation would impair the effective administration of the Government."  Lindgren, 665 F.2d at 980.

Based on the foregoing, the Court is of the opinion that the alleged decision not to fairly consider Maruyama's bid does not properly fall within the disretionary function exception.  Even assuming, without deciding, that MIHA's decisions to develop the turn-key project and to solicit the bids for its construction were made at the "policy level," the decisions made regarding the execution of the bid procedures were operational actions taken to carry out the established policy.  The actors

were not engaged in policy planning of a sensitive nature where it is desirable to protect them from suit. Rather, the handling of the actual bid procedure was an operational task readily governed by judicially reviewable standards; judicial evaluation of such decisions would not hamper or interfere with the "effective administration of the government." Accordingly, the implied contract claim is not subject to dismissal on grounds of governmental immunity and, material questions of fact remaining, is not ripe for summary judgment.

### VI.

In summary, for the reasons stated herein, the Court:

1)   grants MIHA's motion to dismiss the fraud claim (Count IV); and

2)   denies MIHA's motion to dismiss the due process and equal protection claims (Count II); and

3)   Vacates the prior summary judgment decision in favor of MIHA on the implied contract claim and reinstates that claim.

May 26, 1984
_____
Date