**Avis R. DRAWHORN, Glena R. Cole, and Gerrell M. Drawhorn, Appellants,**

v.

**TEXACO CHEMICAL COMPANY and the B.F. Goodrich Company, Appellees.**

**No. 09–93–117 CV.**

Court of Appeals of Texas, Beaumont.

Submitted May 26, 1994.

Decided Nov. 23, 1994.

Dale K. Hanks, Townsley Hanks & Townsley, Beaumont, for appellants.

D. Allan Jones, Orgain, Bell & Tucker, Beaumont, Stephen C. Dillard, Jennifer Bruch Hogan, Fulbright & Jaworski, Houston, for appellees.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

This is a wrongful death suit brought by the widow and certain children of Thomas Drawhorn (Plaintiffs), who died from leukemia on December 16, 1992. Plaintiffs contend Mr. Drawhorn's leukemia was caused by his exposure to the chemical butadiene while he worked at a synthetic rubber manufacturing facility in Port Neches, Texas.

Plaintiffs sued Texaco Chemical Company (Texaco), the successor to Neches Butane

Products Company (Neches Butane), and the B.F. Goodrich Company (Goodrich), each of which operated facilities owned by the United States Government (Government) that were located adjacent to Mr. Drawhorn's workplace. Plaintiffs allege that the butadiene manufactured by Neches Butane and the butadiene emissions into the ambient air from the facilities operated by Neches Butane and Goodrich combined to cause Mr. Drawhorn's myeloproliferative disorder and leukemia. Plaintiffs asserted various causes of action, including trespass, pollution tort, intentional tort, negligence, and gross negligence.

The case was called for trial and immediately before jury selection was to begin, Defendants filed a Motion to Dismiss the Plaintiff's Claims for Lack of Jurisdiction, contending they were immune from suit based on the doctrine of sovereign immunity.[1] The trial court granted the motion and dismissed the case. This appeal follows.

### Fact Statement

During World War II, as part of the National Defense Program, the Government, in collaboration with private companies, planned and funded the construction and operation of a styrene-butadiene rubber manufacturing complex (SBR Complex) in Port Neches, Texas. The SBR Complex consisted of three facilities: (1) a butadiene manufacturing plant located on the south side of the Complex; (2) a styrene-butadiene rubber manufacturing facility, located in the middle of the complex; and (3) another styrene-butadiene rubber manufacturing facility, located on the north side of the complex. The Government owned the entire complex, including the land, the facilities, the materials, and the finished products. The stated policy of the Government was to maintain "at all times in the interest of the national security and common defense ... a ... rubber-producing industry in the United States of sufficient productive capacity to assure the availability in times of national emergency of adequate supplies of synthetic rubber to meet the essential civil-

1. The Defendants' motion, in substance, was an untimely motion for summary judgment, which violated Tex.R.Civ.P. 166a because Plaintiffs were not given the required twenty-one days notice of the hearing. However, Plaintiffs do not raise this, therefore it is not before this court.

ian, military, and naval needs of the country...." See Rubber Act of 1948, ch. 166, 62 Stat. 101 (1948) (previously codified at 50 U.S.C. §§ 1921–38) (terminated 1955).

In order to effectuate this policy, the Government, through the Rubber Reserve Company, entered into operating agreements with Texaco's predecessor in interest, Neches Butane, and Goodrich. During the period in question, the butadiene rubber manufacturing facility was operated by Neches Butane; the styrene-butadiene rubber manufacturing facility in the middle of the complex was operated by Goodrich; and the styrene-butadiene rubber manufacturing facility on the north side was operated by U.S. Rubber Company. The butadiene manufactured by Neches Butane was supplied to the adjacent facilities for use in the manufacture of the styrene-butadiene rubber. From 1950–1953 Thomas Drawhorn worked for U.S. Rubber Company at the facility it operated in Port Neches.

### Federal vs. State Jurisdiction

Defendants now contend the federal courts have exclusive jurisdiction of this case under 28 U.S.C. § 1346(b) (1988) which reads, in pertinent part:

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment....

■ While defendants did not raise this issue before the trial court, the absence of subject matter jurisdiction can be raised at any time and cannot be waived. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–444 (Tex.1993). Therefore, if defendants are indeed "agencies" of the Government, then the state courts have no jurisdiction. Congress by adoption of the Federal Tort Claims Act has divested the district courts of Texas of all original jurisdiction to hear and determine questions such as those involved in this proceeding. *Accord: Southwestern Bell Tel. Co. v. City of*

*Kountze*, 543 S.W.2d 871, 876 (Tex.Civ. App.—Beaumont 1976, no writ).

### The Sovereign Immunity Claim

Separate and apart from the jurisdictional issue, Defendants claim they are entitled to the same sovereign immunity enjoyed by the Government. They rely upon 28 U.S.C. § 2671 (1988), which reads, in pertinent part:

As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.

Texaco and Goodrich claim they fit within the phrase "corporations primarily acting as instrumentalities or agencies of the United States...."

### The Discretionary Function Exemption

■ The question whether the discretionary function exemption applies is one of subject-matter jurisdiction; if the exemption applies it is a jurisdictional bar to the maintenance of an action and a court must dismiss for lack of subject-matter jurisdiction. *Smith v. United States*, 546 F.2d 872 (10th Cir.1976). *See also Nevin v. United States*, 696 F.2d 1229, 1231 (9th Cir.1983), and *Lindgren v. United States*, 665 F.2d 978, 982 (9th Cir.1982).

### The Issue: Contractor or Agent/Agency

■ The types of corporations that have been afforded federal agency status are those such as the Federal Deposit Insurance Corporation (FDIC), which was established by Congress. *See Safeway Portland Employees' Federal Credit Union v. Federal Deposit Insurance Corporation*, 506 F.2d 1213 (9th Cir.1974).

Even corporations that were created and chartered pursuant to acts of Congress are not necessarily considered "federal agencies" for purposes of 28 U.S.C. § 2671. For exam-

ple, a production credit union, which is chartered pursuant to federal statute and is even designated in the statute as an "instrumentality of the United States" is not considered a federal instrumentality or federal agency for purposes of 28 U.S.C. § 2671. *South Central Iowa Production Credit Association v. Scanlan*, 380 N.W.2d 699 (Iowa 1986). Similarly, the Civil Air Patrol, again created and chartered pursuant to federal statute, is not considered a federal agency within the meaning of 28 U.S.C. § 2671. *Pearl v. United States*, 230 F.2d 243 (10th Cir.1956); *Kiker v. Estep*, 444 F.Supp. 563 (N.D.Ga.1978).

Defendants cite and rely on *Platte Pipe Line Co. v. United States*, 846 F.2d 610, 612 (10th Cir.1988), *Gleason v. United States*, 458 F.2d 171, 173 (3rd Cir.1972) and *McCall v. United States*, 338 F.2d 589, 593 (9th Cir. 1964), *cert. denied*, 380 U.S. 974, 85 S.Ct. 1334, 14 L.Ed.2d 269 (1965) to support their interpretation of section 1346(b). None of these cases involved claims against private corporations that were acting as agents of the Government. Texaco and Goodrich are private corporations, created not by acts of Congress but rather by acts of individuals and other private corporations.[2]

The Goodrich agreement was executed May.12, 1942. It was between the Rubber Reserve Company and B.F. Goodrich. The agreement refers to Goodrich as "Operator"; it specifically refers to "Operator, as agent for Reserve." The Neches Butane Agreement was executed May 15, 1942. It was between the Rubber Reserve Company and Neches Butane. The agreement refers to Neches Butane as "Contractor": it never refers to "agent for Reserve". The agreements between the Government and the defendants expressly state that "all persons managing and operating the Plant, or engaged in the performance of this contract by [operator or contractor], shall be employed or retained by [operator or contractor] and *shall not be employees of [the Government] for any purpose whatsoever.*" (Emphasis added.)

A critical element in distinguishing an agency from a contractor is the power of the Government "to control the detailed physical performance of the contractor." *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390, 398 (1976), citing *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219–20, 37 L.Ed.2d 121 (1973). *Accord: Jennings v. United States*, 530 F.Supp. 40, 42 (D.D.C.1981); *Schwab v. United States*, 649 F.Supp. 1319, 1325 (M.D.Fla.1986), *affirmed*, 823 F.2d 556 (11th Cir.1987). There is no evidence of this type of detailed control. Defendants were contractors with the Government, not agents of the Government and certainly not Government agencies.

### Summary

Being contractors with the Government, Defendants may be sued in state court. Likewise, they are not afforded any of the immunities under the Federal Tort Claims Act. The summary judgment is reversed.

**REVERSED AND REMANDED.**

---

2. Neches Butane, Texaco's predecessor, was organized as a corporation by the Atlantic Refining Company (now the Atlantic Richfield Company), the Gulf Oil Corporation (now Chevron U.S.A. Inc.), the Pure Oil Company (now Union Oil of California), the Socony–Vacuum Oil Company (now Mobil Oil Corporation) and The Texas Company (now Texaco Inc.).