RONALD E. FORD, SR., Administrator of the Estate of SEAN PADDOCK (formerly known as Sean Ford), decedent, Plaintiff v. JOHNNY PADDOCK, and wife LYNN PADDOCK; WAKE COUNTY DEPARTMENT OF HUMAN SERVICES; MARIA F. SPAULDING, in her capacity as Director of the Wake County Department of Human Services; WARREN LUDWIG, in his capacity as Wake County Director of Child Welfare and Mental Health; and CHILDREN'S HOME SOCIETY OF NORTH CAROLINA, INC., Defendants

No. COA08-1012

(Filed 7 April 2009)

**1. Appeal and Error—appealability—interlocutory order—denial of motion to transfer venue**

Although defendants' appeal from the denial of a motion to transfer venue is an appeal from an interlocutory order, the order affects a substantial right and is immediately appealable.

**2. Venue—denial of motion to transfer—county where acts or omissions occurred**

The trial court did not err in a wrongful death case by denying defendants' motions to transfer venue on the ground that they are entitled as a matter of right to have the case moved from Johnston County to Wake County because: (1) a cause of action under N.C.G.S. § 1-77 arises in the county where the acts or omissions constituting the basis of the action occurred; and (2) plaintiff's complaint alleged that defendants Wake County Health and Human Services, Spaulding and Ludgwig (altogether WCHS) committed acts of negligence in Johnston County, that defendant Children's Home Society of North Carolina, Inc. acted as an agent of the WCHS defendants and committed acts of negligence in Johnston County, and that there were negligent omissions by defendants of acts which should have taken place in Johnston County.

Appeal by defendants from order entered 2 July 2008 by Judge E. Lynn Johnson in Johnston County Superior Court. Heard in the Court of Appeals 12 February 2008.

*Twiggs, Beskind, Strickland & Rabenau, PA, by Karen M. Rabenau, Jerome P. Trehy, Jr. and Jesse H. Rigsby, IV for plaintiff-appellee.*

FORD v. PADDOCK

[196 N.C. App. 133 (2009)]

*David F. Mills, PA, by David F. Mills, for plaintiff-appellee.
Bailey & Dixon, LLP, by David S. Coats and J.T. Crook,
for defendant-appellant Children's Home Society of North
Carolina, Inc.*

*Office of the County Attorney, by Assistant County Attorneys
Lucy Chavis and Roger A. Askew, and County Attorney Scott W.
Warren, for defendant-appellants Wake County Department of
Human Services, Maria F. Spaulding, and Warren Ludwig.*

*Paul A. Meyer, for North Carolina Association of County Commissioners, Amicus Curiae.*

STEELMAN, Judge.

Where some part of plaintiff's cause of action arose in Johnston County, the trial court did not err in denying defendants' motions to transfer venue.

## I. Factual and Procedural Background

In January 2003, the Wake County Department of Human Services ("WCHS") assumed custody of Sean Ford ("the minor child"). In the fall of 2004, WCHS partnered with Children's Home Society of North Carolina, Inc. ("CHS"), a private child placement and adoption agency which does business in Johnston County, to effect the adoption of the minor child and his siblings by defendants Lynn and Johnny Paddock. In January of 2005, the minor child and his siblings began visiting the Paddock home. On 24 January 2005, WCHS and CHS decided to place the children with the Paddocks for adoption, and gave the Paddocks full-time custody of the children the following weekend. On 11 March 2005, the minor child was placed with the Paddocks for adoption. On 25 July 2005, the adoption was finalized in the courts of Johnston County. On 25 February 2006, Mrs. Paddock wrapped and bound the minor child with blankets so tightly that the minor child suffocated and died. Mrs. Paddock was convicted of first-degree murder on 12 June 2008.

On 20 February 2008, plaintiff Ronald Ford, the minor child's biological paternal grandfather, filed a complaint in the Superior Court of Johnston County, seeking compensatory and punitive damages for the wrongful death of the minor child. The complaint named as defendants Johnny and Lynn Paddock; WCHS; Maria Spaulding, in her capacity as Director of WCHS; Warren Ludwig, in his capacity as Wake County Director of Child Welfare and Mental Health; and CHS.

Plaintiff's complaint alleged that both WCHS and CHS were negligent in the placement of the minor child with the Paddocks, and in supervising and investigating complaints of inappropriate actions by the Paddocks prior to the finalization of the adoption proceedings. Plaintiff alleged that these acts of negligence were a proximate cause of the minor child's death.

Defendants WCHS, Maria Spaulding, and Warren Ludwig (collectively referred to as "WCHS defendants") answered on 15 April 2008, and asserted affirmative defenses, including sovereign and governmental immunity. The WCHS defendants moved to change venue to Wake County. On 2 May 2008, CHS filed an answer and a motion to transfer venue to Wake County. CHS's motion to transfer venue was not based on an independent claim that venue in Johnston County was improper as to CHS, but rather was based on the assertion that venue was improper in Johnston County with respect to the WCHS defendants. Following a hearing on 27 May 2008, the trial court denied the motions to transfer venue. Defendants appeal.

## II.  Interlocutory Appeal

**[1]** We first address the issue of whether the denial of defendants' motions to transfer venue is appealable.

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (citation omitted), *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). "Although defendants' appeal is interlocutory, we have previously held that a denial of a motion to transfer venue affects a substantial right." *Morris v. Rockingham Cty.*, 170 N.C. App. 417, 418, 612 S.E.2d 660, 662 (2005) (quotation omitted). Thus, although this appeal is interlocutory, we hold that immediate review is proper. *See id.*

## III.  Venue

**[2]** In their sole argument on appeal, defendants contend that the trial court erred in denying their motions to transfer venue on the grounds that they are entitled as a matter of right to have the case moved to Wake County. We disagree.

When reviewing a decision on a motion to transfer venue, the reviewing court must look to the allegations of the plaintiff's complaint. *Wellons Constr., Inc. v. Landsouth Props., LLC*, 168 N.C. App.

403, 405, 607 S.E.2d 695, 697 (2005); *see also McCrary Stone Service v. Lyalls,* 77 N.C. App. 796, 799, 336 S.E.2d 103, 105 (1985), *disc. review denied,* 315 N.C. 588, 341 S.E.2d 26 (1986).

N.C. Gen. Stat. § 1-77 provides that an action against a public officer, or person appointed to execute his or her duties, for acts performed in his or her official capacity, "must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial[.]" N.C. Gen. Stat. § 1-77(2) (2007). "Any consideration of G.S. 1-77(2) involves two questions: (1) Is defendant a 'public officer or person especially appointed to execute his duties'? (2) In what county did the cause of action in suit arise?" *Coats v. Hospital,* 264 N.C. 332, 333, 141 S.E.2d 490, 491 (1965). Venue is proper in any county in which the acts or omissions which form the basis of the suit occurred. *Frink v. Batten,* 184 N.C. App. 725, 730, 646 S.E.2d 809, 812 (2007). "[T]hose acts and omissions may arise in multiple counties." *Id.*

The parties do not dispute that the WCHS defendants are public officers or persons especially appointed to execute official duties. Additionally, the allegations of negligence in plaintiff's complaint center on the adoption of the minor child, which acts were done by defendants by virtue of their public office. *See* N.C. Gen. Stat. § 1-77(2). Thus, the only pertinent inquiry in this case is where the cause of action arose.

Defendants argue that the cause of action arose solely in Wake County. Defendants contend that "when the acts or omissions constituting the basis of the action . . . are analyzed in the context of a statutory officer, any failure to act is predicated upon the decision or lack of decision of the officer and necessarily would 'occur' where the officer is charged by law to carry out his duties." Defendants further contend that all of their decision-making authority is derived from Wake County, and therefore Wake County is the only place where venue is proper. On the other hand, plaintiff contends, and the trial court held, that since the death of the minor child, the adoption, and the placement of the child by WCHS occurred in Johnston County, at least "some part" of the cause arose in Johnston County.

The facts of the instant case are analogous to those in *Frink, supra.* In *Frink,* the plaintiffs brought an action in Robeson County against Robeson County, Columbus County, and various public officials and employees of those counties, for the alleged wrongful death of the decedent, a Columbus County jail inmate who commit-

ted suicide. Plaintiffs alleged that the decedent was initially taken into custody at the Columbus County jail, and subsequently transferred to the Robeson County Detention Center pursuant to an agreement between the two counties. Plaintiffs further alleged that the decedent made several suicide attempts while in the custody of Robeson County, and that officials at the Detention Center contacted Columbus County officials, explained the situation, and requested that the decedent be transferred back to Columbus County. The decedent was transferred back to Columbus County, and two days later he committed suicide.

On appeal, Columbus County argued that, pursuant to N.C. Gen. Stat. § 1-77, venue was proper only in Columbus County because that is where the injury occurred. This Court rejected Columbus County's argument, first recognizing the longstanding rule that the cause of action under N.C. Gen. Stat. § 1-77 arises in the county where the acts *or omissions* constituting the basis of the action occurred. The Court went on to analyze the phrase in N.C. Gen. Stat. § 1-77 "where the cause of action *or some part thereof* arose," and concluded that since "some part" of plaintiffs' cause of action arose in Robeson County, venue was proper there. *Frink* at 730-31, 646 S.E.2d at 812.

In the instant case, plaintiff made the following factual allegations in his complaint:

34. Upon information and belief, on or about January 26, 2005, [WCHS defendants] received a report that the minor child had been mistreated and improperly disciplined by one or both of the Paddocks on a visit the previous weekend to the Paddock home.

. . .

39. Upon information and belief, on or about January 27, 2005, [WCHS defendants] received additional information regarding neglect, abuse, and improper discipline relating to the minor child. The report indicated: When Lynn returned the minor child and his siblings to the foster home on January 23, 2005, the minor child had a bruise on his bottom. Lynn told the foster mother that the minor child had fallen off a bed resulting in the bruise. However, the minor child reported to his foster mother that Lynn had hit him in the bathroom for playing with the dog. The minor child's siblings also reported that Lynn had hit the minor child for playing with the dog and

that the minor child was not allowed to eat because he did not want to jump on the trampoline for exercise.

. . .

44. Upon information and belief, [WCHS defendants] conducted an interview with the minor child and the minor child's siblings on January 27, 2005. The minor child told [WCHS defendants] that Lynn had hit him. The investigator saw the bruise on the minor child's bottom. The investigator spoke to the minor child's siblings, both of whom reported that Lynn had hit the minor child. One of the siblings reported that Lynn hit the minor child with her hand because the minor child was "messing with the dog." The siblings again reported that Lynn did not allow the minor child to eat because he would not jump on the trampoline for exercise. Both siblings expressed "diminished enthusiasm" for the Paddocks to [WCHS defendants].

. . .

54. Upon information and belief, on March 11, 2005, [WCHS defendants] moved the minor child into the home of the Paddocks full time for purposes of adoption placement.

55. Upon information and belief, [WCHS defendants] did not visit the Paddock home again until March 21, 2005.

56. Upon information and belief, on or about March 22, 2005, [WCHS defendants] reported to the juvenile court that the report of improper discipline was unsubstantiated.

57. Upon information and belief, [WCHS defendants] failed to disclose to the [Johnston County] court all pertinent and available information of which it was aware, and that the juvenile court should have heard, and that suggested that the Paddock home was a dangerous and inappropriate placement for the minor child, or at least, would have revealed that [WCHS defendants] and/or CHS had not performed a comprehensive and complete investigation and assessment of the home.

. . .

60. Upon information and belief, [WCHS defendants] delegated its responsibilities to CHS.

61. Upon information and belief, after March 21, 2005, [WCHS defendants] did not again visit the Paddock home or have any contact with the Paddocks until after the minor child's death.

. . .

64. Upon information and belief, neither [WCHS defendants] nor CHS provided the Johnston County Clerk of Superior Court with information about the inappropriate discipline, the placing of plastic pipe around the house used for threatening and hitting the minor child and his siblings, the bruising on the minor child, the reports by the siblings of the inappropriate discipline, the consistency of the reports, the Paddocks' history of substance abuse, the Paddocks' religious beliefs that called for harsh physical discipline of the children . . . or other matters of which they were aware that could and should have delayed or prevented the final adoption decree and of which the Clerk of Superior Court should have been made aware.

. . .

66. Upon information and belief, after July 22, 2005, neither [WCHS defendants] nor CHS had further contact with the Paddocks or the minor child and took no steps to monitor or insure the safety of the minor child.

Plaintiff further alleged the following negligent conduct by the WCHS defendants occurring in Johnston County:

e) . . . failing to obtain timely and appropriate assessment and training for the Paddocks in appropriate discipline techniques;

f) . . . failing to remove the minor child from a dangerous environment; to wit, the Paddocks' home;

. . .

j) . . . failing to promote the safety of the minor child . . .

r) . . . failing to initiate an assessment of the circumstances of the minor child, including a visit to the Paddock home, upon the earliest report of concerns of abuse . . .

v) . . . failing to follow up with the Paddocks and the minor child after the adoption[.]

Plaintiff's complaint alleged that the WCHS defendants committed acts of negligence in Johnston County. Further, plaintiff's com-

plaint alleged that CHS acted as an agent of the WCHS defendants and committed acts of negligence in Johnston County. Finally, plaintiff alleged that there were negligent omissions by the defendants of acts which should have taken place in Johnston County. *See Ducey v. United States*, 713 F.2d 504, 508 fn. 2 (9th Cir. 1983) (holding that, under the Federal Tort Claims Act, a negligent omission should be deemed to occur "where the act necessary to avoid negligence should have occurred").

We hold that the trial court correctly concluded that venue was proper in Johnston County. *See Frink* at 731, 646 S.E.2d at 812 ("In short, even though the complaint also alleges acts and omissions that occurred in Columbus County, since 'some part' of plaintiffs' cause of action arose in Robeson County, the trial court appropriately found venue to be proper in Robeson County.")

This argument is without merit.

AFFIRMED.

Judges GEER and STEPHENS concur.